IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| MEARS GROUP, INC., | ) | Civil Action No. 2:17-CV-02418-DCN |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **PLAINTIFF MEARS GROUP, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** |
| KIAWAH ISLAND UTILITY, INC., | ) ) | |
| Defendants. | ) ) | |

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Mears Group, Inc. ("Mears" or "Plaintiff"), by and through its undersigned counsel, hereby files this Motion for Partial Summary Judgment and Memorandum in Support, and would show the Court as follows:

**I.      NATURE OF THE CASE**

Defendant Kiawah Island Utility, Inc. ("KIU") and Mears entered into a contract for a pipeline project between Kiawah Island and Johns Island in South Carolina. The contract required KIU to purchase and maintain Builder's Risk "all-risk" coverage that would cover all of Mears' work at the project site, would be primary coverage, and would name Mears as a loss payee. During construction of the pipeline, the pipe became stuck in the hole, and the work was lost. As a result, Mears' work up to that point had to be redone. Mears assisted KIU in submitting a claim to KIU's Builder's Risk insurer, but the insurer asserted that its policy was excess to a policy maintained by Mears—in other words, that it was not primary.

Mears asserts KIU was obligated by contract to obtain and maintain *primary* Builder's Risk "all-risk" coverage on the project with specific coverages. KIU, on the other hand, asserts Mears had the obligation to provide the primary Builder's Risk coverage. In this Motion, Mears

seeks summary judgment on its claim for a declaratory judgment that KIU had the obligation to provide primary "all-risk" Builder's Risk coverage and to name Mears as a loss payee, and summary judgment on its breach of contract claim on the grounds that KIU breached that obligation.

## II.    SUMMARY OF THE ARGUMENT

The contract between KIU and Mears is unambiguous. No party has pleaded ambiguity. The contract plainly states that, unless otherwise provided in the Supplementary Conditions of the contract, KIU was to purchase and maintain primary all-risk builder's risk insurance for the project and name Mears as a loss payee. The "Supplementary Conditions" do not change KIU's obligation. KIU did not comply with the contract. Mears is entitled to partial summary judgment on its claim for declaratory judgment that KIU had the obligation to provide primary "all-risk" Builder's Risk insurance for the project and to name Mears as a loss payee and summary judgment on its breach of contract claim on the grounds that KIU failed to comply with this provision of the contract.[1]

## III.    STATEMENT OF THE FACTS RELATING TO SUMMARY JUDGMENT

### A.    KIU and Mears Entered Into a Contract for "Work," Which KIU Promised to Insure With Primary Builder's Risk "All-Risk" Insurance.

KIU and Mears entered into a contract, effective January 7, 2016, for the horizontal direction drilling ("HDD") and installation of three (3) sections of a fusible PVC pipeline under the Kiawah River between Kiawah Island and Johns Island, South Carolina. Exhibit 1 to the Affidavit of Stephen L. Gude, attached as Exhibit A, Contract between KIU and Mears (the "Contract"). As defined by the Contract, the term "Work" meant:

> The entire construction or the various separately identifiable parts thereof required to be provided under the Contract Documents. Work includes and is the result of

---

[1] Mears reserves its rights to later move for summary judgment on any other issues.

performing or providing all labor, services, and documentation necessary to produce such construction and furnishing, installing, and incorporating all materials and equipment into such construction, all as required by the Contract Documents.

Exhibit 1, pg. 57 at Art. 1.01 A. 50.

The Contract allocated risk between the parties, and it outlined specific insurance requirements for both Mears and KIU relating to the project. Article 5.06 specifies that KIU would insure the Work through a Builder's Risk "all-risk" policy, and that KIU would include the interest of Mears in such insurance and name Mears as a loss payee. In pertinent part, the Contract states:

> 5.06 *Property Insurance*
>
> A. ***Unless otherwise provided in the Supplementary Conditions, Owner [KIU] shall purchase and maintain property insurance upon the Work at the Site in the amount of the full replacement cost thereof*** (subject to such deductible amounts as may be provided in the Supplementary Conditions or required by Laws and Regulations). *This insurance shall:*
>
>   1. *include the interests of Owner, Contractor [Mears],* Subcontractors, and Engineer, and any other individuals or entities identified in the Supplementary Conditions, and the officers, directors, members, partners, employees, agents, consultants, and subcontractors of each and any of them, **each of whom is deemed to have an insurable interest and shall be listed as a loss payee**;
>
>   2. *be written on a Builder's Risk "all-risk" policy form that shall at least include insurance for physical loss or damage to the Work*, temporary buildings, falsework, and materials and equipment in transit, and shall insure against at least the following perils or causes of loss: fire, lightning, extended coverage, theft, vandalism and malicious mischief, earthquake, collapse, debris removal, demolition occasioned by enforcement of Laws and Regulations, water damage (other than that caused by flood), and such other perils or causes of loss as may be specifically required by the Supplementary Conditions.
>
>   3. *include expenses incurred in the repair or replacement of any insured property (including but not limited to fees and charges of engineers and architects);*

3

> 4. ***cover materials and equipment stored at the Site or at another location that was agreed to in writing by Owner prior to being incorporated in the Work***, provided that such materials and equipment have been included in an Application for Payment recommended by Engineer;

. . . .

Exhibit 1, pg. 72 at Art. 5.06 A (emphasis added).

The Contract specified that KIU's Builder's Risk "All-risk" insurance was intended to protect KIU and Mears and would be primary coverage for all losses and damages to which it applied, and Mears would be a loss payee. Article 5.07 provides:

> 5.07  *Waiver of Rights*
>
> A. ***Owner and Contractor intend that all policies purchased in accordance with Paragraph 5.06 will protect Owner, Contractor,*** Subcontractors, and Engineer, and all other individuals or entities identified in the Supplementary Conditions ***as loss payees*** (and the officers, directors, members, partners, employees, agents, consultants, and subcontractors of each and any of them) in such policies ***and will provide primary coverage for all losses and damages caused by the perils or causes of loss covered thereby***. All such policies shall contain provisions to the effect that in the event of payment of any loss or damage the insurers will have no rights of recovery against any of the insureds or loss payees thereunder. Owner and Contractor waive all rights against each other and their respective officers, directors, members, partners, employees, agents, consultants and subcontractors of each and any of them for all losses and damages caused by, arising out of or resulting from any of the perils or causes of loss covered by such policies and any other property insurance applicable to the Work; and, in addition, waive all such rights against Subcontractors and Engineer, and all other individuals or entities identified in the Supplementary Conditions as loss payees (and the officers, directors, members, partners, employees, agents, consultants, and subcontractors of each and any of them) under such policies for losses and damages so caused. None of the above waivers shall extend to the rights that any party making such waiver may have to the proceeds of insurance held by Owner as trustee or otherwise payable under any policy so issued.

Exhibit 1, pg. 73 at Art. 5.07 (emphasis added).

The Contract provides that South Carolina law applies. Exhibit 1, pg. 115 at Art. 17.05.

B.     **The Supplemental Conditions to the Contract Did Not Modify or Relieve KIU's Obligation to Insure the "Work."**

KIU's insurance obligations under Article 5.06 applied "[u]nless otherwise provided in the Supplementary Conditions" of the Contract. Exhibit 1, pg. 72 at Art. 5.06. The purpose of the Supplementary Conditions was to "amend or supplement the Standard General Conditions of the [Contract]", but made clear that "[a]ll provisions that are not so amended or supplemented remain in full force and effect." Exhibit 1, pg. 122 at Document 00815, Supplementary Conditions. No Supplementary Conditions amend or supplement KIU's obligation to provide primary Builder's Risk insurance under Articles 5.06 through 5.08. In fact, the Supplementary Conditions do not mention Articles 5.06 through 5.08. Consequently, Articles 5.06 through 5.08 "remain in full force and effect."

The Contract is on a EJCDC form. *See* Exhibit 1 to the Affidavit of Stephen L. Gude (stating at the bottom of the first page of the general conditions, "EJCDC C-700 Standard General Conditions of the Construction Contract").

The EJCDC provides guidance regarding the use of its General Conditions and Supplementary Conditions. *See* "Guide to the Preparation of Supplementary Conditions," EJCDC C-800, 2007 Edition (the "Guide") attached as Exhibit C. The Guide states, "Supplementary Conditions are modifications to the General Conditions—additions, deletions, changes." Exhibit C, pg. 5. Plaintiff requests the Court take judicial notice of the Guide. *See* Rule 201, FED. R. EVID.

The Guide contains a specific suggested supplementary condition to be used when the contractor, rather than the owner, is to purchase Builder's Risk property insurance. The Guide says, in pertinent part:

> In the event that the Contractor, rather than the Owner, will purchase Builder's Risk property insurance, use the following SC-5.06A:

> **SC-5.06A.     Delete Paragraph 5.06A in its entirety and insert the following in its place:**
>
>> **A.  Contractor shall purchase and maintain property insurance upon the Work at the Site in the amount of the full replacement cost thereof.  Contractor shall be responsible for any deductible or self-insured retention.  This insurance shall:**
>>
>> . . . .

Exhibit C, pg. 14.

The construction contract between Mears and KIU does not use this alternative form of SC-5.06A.  Instead, the Contract includes the standard language from the General Conditions, which provides for the owner to provide Builder's Risk insurance.  It says:

> 5.06     *Property Insurance*
>
> A.     **Unless otherwise provided in the Supplementary Conditions, Owner [KIU] shall purchase and maintain property insurance upon the Work at the Site in the amount of the full replacement cost thereof** (subject to such deductible amounts as may be provided in the Supplementary Conditions or required by Laws and Regulations).  This insurance shall:
>
> . . .

Exhibit 1, pg. 72.

Had the parties intended for Mears to provide the Builder's Risk insurance, the language suggested in the Guide would have been used.  It was not used.  The language that was used unambiguously provides for KIU to provide primary Builder's Risk insurance, and this provision was not modified by any other provision of the Contract.

### C.     The Parties Allocated The Risk Of Buying Primary Builder's Risk Insurance To KIU.

The Contract makes clear that the parties knew how to allocate insurance obligations between them.  The Supplementary Conditions provide Mears is to provide primary commercial general liability insurance, as follows:

6

Insurance Requirements: The Contractor hereby agrees that as a condition precedent to commencing Work under this Contract, it will present to the Owner acceptable certificates of insurance and corresponding endorsements evidencing the maintenance of the following insurance coverage of the Contractor. Contractor will maintain said insurance in force at all times during the performance of any Work and for a period of eight (8) years following completion of its Work.

The Contractor (and its consultants and Subcontractors or anyone directly or indirectly employed by any of them unless other insurance requirements are approved in writing, in advance by Owner, will provide and maintain the following types and amounts of insurance pursuant to the most current ISO forms if the forms stated below have been updated.:

1. Commercial General Liability Insurance: Contractor must provide Commercial General Liability insurance using the 2007 ISO Occurrence Form (*CG 00 01 12 07*), or an equivalent form. The Commercial General Liability insurance must include covered for "Premises-Operations," "Independent Contractors," "Products-Completed Operations," "Personal Injury," and "Contractual Liability" and must not include an exclusion for "action over" claims. The "Contractual Liability" must include the tort liability of another assumed in a business contract. The Contractor or his agent shall verify that there is no endorsement or modification of the CGL limiting the scope of coverage for liability arising from "explosion," "collapse," or "underground" property damage (known as the "x,c,u" exclusions). This insurance shall be maintained throughout the duration of the Project and for a minimum of eight (8) years following completion of its Work. Limits shall be as follows:

   **Each Occurrence Limit**

   | | |
   |---|---|
   | Bodily Injury/Property Damage Liability | $1,000,000 |
   | Personal Injury Liability | $1,000,000 |
   | General Aggregate Limit | $2,000,000 |
   | Products/Completed Operations Aggregate Limit | $2,000,000 |

   This policy must include:

The General Aggregate Limit is to be written on a "per project" basis using contractor's "Per Project endorsement: **Amendment-Aggregate Limits of Insurance** (*CG 2503* or equivalent form). The "**Products/Completed Operations" Aggregate Limit** must be $2,000,000, or written confirmation provided that the commercial Umbrella coverage affirmatively "follows form" and includes liability coverage arising out of the insured's "Completed Operations."

*The Owner, including its subsidiaries, partners, partnerships, affiliated companies, successors, and assigns, are to be named as an additional insured in*

7

> *the Contractor's policies with respect to this* project using the **Additional Insured-Owners,...Contractor** endorsements (*CG 20 10 10 01 & 20 37 10 01 or the current versions thereof*), or a substitute providing equivalent coverage. Verification of additional insured status shall be furnished to Owner by mailing a copy of the endorsement AND Certificate of Insurance.
>
> ***This insurance will apply as primary insurance with respect to any other insurance or self-insurance the Owner may have or elect to carry with respect to this Project.***
>
>     . . . .

Exhibit 1, pgs. 123-24 at SC-5.04 b. 1. (emphasis added in bold, italics).

The Supplemental Conditions also provide for Mears to maintain "Business Automobile Liability Insurance," "Workers Compensation" and "Umbrella Excess Liability" coverages, but are completely silent as to Builder's Risk coverage. As such, the General Conditions of the Contract regarding KIU's obligation to procure primary Builder's Risk all-risk insurance "remain in full force and effect." Exhibit 1, pgs. 122-30 at Document 00815, Supplementary Conditions.

### D. The Special Conditions to the Contract Did Not Modify or Relieve KIU's Obligation to Provide Primary Builder's Risk Insurance.

The Contract also includes "Special Conditions." The Contract does not give the Special Conditions precedence over the General or Supplemental Conditions. The Special Conditions required Mears to have adequate fire and extended coverage in force on the project.[2] Significantly, the Special Conditions do not require an all-risk Builder's Risk policy or require the fire and extended coverage to be primary. The provision states:

> **SC-7   CONTRACTOR'S AND SUBCONTRACTOR'S INSURANCE:** The Contractor shall not commence work under this contract until obtaining all the

---

[2] Fire and Extended coverage provides a limited coverage for specifically named perils. *See* Matthew Bender, 1-2 Insuring Real Property § 2.02. It is not an "all risk" policy, which generally covers all risk of loss except as specifically excluded. *Id*. In particular, "extended coverage" normally refers to coverage for the following perils: windstorm, hail, explosion (except of steam boilers), riot, civil commotion, aircraft, vehicles, and smoke. *See* Steven A. Coombs and Donald S. Malecki, *The Builder's Risk Book*, International Risk Management Institute (2012), Appendix B.

8

> insurance required under this paragraph and such insurance has been accepted by the Owner, nor shall the Contractor allow any Subcontractor to commence work on a subcontract until the insurance required of the Subcontractor has been so obtained and accepted.
>
> a. <u>Builder's Risk Insurance (Fire and Extended Coverage)</u>: The Contractor shall have adequate fire and standard extended coverage, with a company or companies acceptable to the Owner, in force on the project.
>
>    The provisions with respect to Builder's Risk Insurance shall in no way relieve the Contractor of its obligation of completing the work covered by the Contract.
>
> b. <u>Proof of Carriage of Insurance</u>: The Contractor shall furnish the Owner with certificates showing the type, amount, class of operations, effective dates, and date of expiration of policies. Whenever possible, such certificates shall contain substantially the following statement: "The insurance covered by this certification shall not be cancelled or materially altered, except after ten (10) days written notice has been received by the Owner."
>
> c. Other insurance requirements are listed in the supplementary conditions.

Exhibit 1, pg. 117 at Document 00710, Special Conditions.

Nothing in the Special Conditions requires this fire and standard extended coverage to be primary. The Special Conditions do not relieve KIU of its obligations to provide primary "all-risk" Builder's Risk Insurance.

    **E.    KIU'S Insurer Determined Its Policy is Excess.**

KIU's insurance for the Project is with Westport Insurance Corporation, policy No. NAP200007802 (the "Westport Policy"). Westport, through its adjuster, Engle Martin, has determined that the Westport Policy is excess to any policy maintained by Mears. *See* Exhibit 2, pgs. 3 and 4 – September 30, 2016 letter from Engle Martin & Associates, a true and correct copy is attached to the Affidavit of Stephen L. Gude, Exhibit A.

As a result of Westport's determination that its policy is excess, Mears was not provided the primary Builder's Risk coverage that it bargained for and which KIU contractually promised

9

to provide.

## IV.  ARGUMENTS & AUTHORITIES

### A.  Declaration Sought

Mears seeks partial summary judgment on its declaratory judgment claim and its breach of contract claim; specifically, Mears seeks summary judgment (1) on its claim for a declaration that KIU had the obligation under the contract to provide a primary Builder's Risk policy on an "all-risk" form for the Kiawah Island Project, naming Mears as a loss payee; and (2) on its claims for declaratory judgment and breach of contract on the grounds that KIU breached the contract in failing to provide such a policy.

### B.  The Standard of Review and Applicable Law on Contract Interpretation.

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In addressing questions surrounding terms of a contract the first step is determine whether, as a matter of law, the contract is unambiguous. *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). If the contract is unambiguous on the dispositive issue, the Court may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. *Id*.

Under South Carolina law, the main concern of the court construing the contract is to ascertain and give effect to the intention of the parties. *Progressive Max Ins. Co. v. Floating Caps, Inc.*, 405 S.C. 35, 46, 747 S.E.2d 178, 184 (2013) (citing *D.A. Davis Constr. Co. v. Palmetto Props., Inc.*, 281 S.C. 415, 418 315 S.E.2d 370, 372 (1983)). "'Parties are governed by their outward expressions and the court is not at liberty to consider their secret intentions.'" *Id*. (quoting *Blakely v. Rabon*, 266 S.C. 68, 73, 221 S.E.2d 767, 769 (1976)).

"'If its language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect.'" *Id.* (quoting *Ellie, Inc. v. Micchichi*, 358 S.C. 78, 93, 594 S.E.2d 485, 493 (Ct. App. 2004)). A court's duty is limited to the interpretation of the contract made between the parties, "regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." *Lee v. Univ. of S.C.*, 407 S.C. 512, 518, 757 S.E.2d 394, 397 (2014) (quoting *S.C. Dep't. of Transp. v. M & T Enters. of Mt. Pleasant*, 379 S.C. 645, 655, 667 S.E.2d 7, 13 (Ct. App. 2008) (citations omitted)). Extrinsic evidence may not be used to create an ambiguity in an otherwise unambiguous contract. *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976).

**C.  The Parties' Insurance Obligations Under the Contract Are Plain, Unambiguous, and Capable of Only One Reasonable Interpretation: KIU Was Required to Provide Builder's Risk Insurance on an "All-Risk" Form for the "Work," and Such Coverage Was to be Primary.**

KIU's Builder's Risk insurance obligations under the Contract are clearly stated in Articles 5.06 through 5.08, and these provisions are not modified by any other provision of the Contract. Article 5.06 requires KIU to provide Builder's Risk "all-risk" insurance for the Work and to name Mears as a loss payee, "[u]nless otherwise provided in the Supplementary Conditions". Exhibit 1, pg. 72 at Art. 5.06. Article 5.07 requires KIU's Builder's Risk insurance to protect Mears and "provide primary coverage for all losses and damages caused by the perils or causes of loss covered thereby." Exhibit 1, pg. 73 at Art. 5.07 A.

The Supplementary Conditions did not alter KIU's obligation to provide primary Builder's Risk Insurance. *See* Exhibit 1, Supplementary Conditions.

Nothing in the remainder of the Contract modifies KIU's obligation to provide primary Builder's Risk insurance and to name Mears as a loss payee. Special Condition SC-7 provides

11

Mears "shall have adequate fire and standard extended coverage, with a company or companies acceptable to the Owner, in force on the project."  Exhibit 1, pg. 117, Special Conditions SC-7.  The Special Conditions do not require such insurance to be primary and do not change the requirements of the General Conditions, Articles 5.06 through 5.08.

It is well settled that a specific provision controls over a general provision.  *See, e.g., Seery v. DePuy Orthopaedics, Inc.*, No. 2:14-cv-04262-RMG, 2014 WL 12609706, at *2 (D.S.C. Dec. 31, 2014) (*quoting U.S. v. Hollbrook*, 368 F.3d 415, 428 (4th Cir. 2004)).  Here, the Contract requires KIU to obtain primary Builder's Risk insurance on an "all-risk" form, and it requires Mears to "have adequate fire and standard extended coverage."  Only KIU is required to provide primary Builder's Risk insurance.  Thus, the specific requirement for KIU to provide primary Builder's Risk insurance controls.  These clauses must be read together.  *See, e.g.*, *Silver v. Aabstract Pools & Spas, Inc.*, 658 S.E.2d 539, 543 (S.C. Ct. App. 2008) (interpreting contract requires that it be read as a whole).  The parties did not intend for each party to provide primary Builder's Risk on an all-risk form—rather they intended for only KIU to provide such insurance.  Since the Contract is unambiguous with respect to KIU's obligation to purchase primary Builder's Risk insurance on an "all-risk" form for the "Work," Mears respectfully submits it is entitled to summary judgment on its declaratory judgment claim on that issue.

      **D.**    **KIU Breached Its Obligations by Failing to Provide Primary Builder's Risk Coverage and by Failing to Name Mears as a Loss Payee.**

KIU's insurer, Westport, has determined that KIU's Builder's Risk policy is excess to Mears' policy.  *See* Exhibit 2 to the Affidavit of Stephen L. Gude, attached as Exhibit A, Letter from Engle Martin.  The Westport policy does not list Mears as a loss payee, only Southwest Water Company.  *See* Westport Policy, Exhibit B, at pg. 10.  Because KIU did not provide

12

primary Builder's Risk insurance, and did not name Mears as a loss payee, partial summary judgment is proper as to KIU's breach of these contractual requirements.

## V.     CONCLUSION

The facts relevant to this motion are undisputed. KIU did not comply with its obligation to provide primary Builder's Risk coverage and name Mears as a loss payee. Accordingly, Mears asks the Court to grant this motion for partial summary judgment as follows: (1) enter partial summary judgment that declares that KIU had the obligation to purchase and maintain primary Builder's Risk insurance on an all-risk form for the project and name Mears as a loss payee and KIU breached the contract by failing to provide primary Builder's Risk insurance for the project and name Mears as loss payee, and (2) enter partial summary judgment in favor of Mears and against KIU on Plaintiff's breach of contract claim on the grounds that KIU breached its contract by failing to provide primary all-risk Builder's Risk insurance coverage.

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/*PATRICK C. WOOTEN
   G. Mark Phillips
   Federal Bar No. 3051
   Patrick C. Wooten
   Federal Bar No. 10399
   151 Meeting Street / Sixth Floor
   Post Office Box 1806 (29402-1806)
   Charleston, SC  29401-2239
   (843) 853-5200
   mark.phillips@nelsonmullins.com
   patrick.wooten@nelsonmullins.com

13

**VORYS, SATER, SEYMOUR and PEASE LLP**
Richard A. Schwartz
Federal Bar No. 5344
David Louie
Federal Bar No. 1126301
700 Louisiana, Suite 4100
Houston, Texas 77002
Telephone: 713-588-7016
Facsimile: 713-588-7081
dschwartz@vorys.com
dllouie@vorys.com

*Attorneys for Plaintiff Mears Group, Inc.*