IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| MEARS GROUP, INC., | ) | Civil Action No. 2:17-CV-02418-DCN |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF MEARS GROUP, INC.'S** |
| | ) | **REPLY IN SUPPORT OF ITS MOTION** |
| KIAWAH ISLAND UTILITY, INC., | ) | **FOR PARTIAL SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Mears Group, Inc. ("Mears"), by and through its undersigned counsel, hereby submits this Reply in support of its Motion for Partial Summary Judgment (ECF No. 18) and in reply to the response memorandum filed by Kiawah Island Utility, Inc. ("KIU") (ECF No. 21).

## I. Introduction

As explained in Mears' motion for partial summary judgment, the Contract specifically and unambiguously required KIU to purchase *primary* builders risk insurance for the project, and KIU failed to do so.

In its response memorandum, KIU does not dispute that it failed to purchase primary builders risk insurance for the project. Rather, KIU argues that the Contract did not require KIU to purchase such insurance or, in the alternative, that the Contract is ambiguous on this point. Both of these alternative arguments are based on a single fundamental error—KIU incorrectly assumes that the provision in the General Conditions requiring KIU to purchase *primary* builders risk insurance contradicts the provision in the Special Conditions requiring Mears to purchase builders risk (fire and extended coverage) insurance. But these two provisions are not contradictory. KIU was required to purchase *primary* builders risk insurance. Mears was required to purchase builders

1

risk (fire and extended coverage) insurance, but this insurance was not required to be primary. These two provisions cannot be interpreted as requiring only Mears to purchase builders risk insurance (KIU's first argument), nor do these two provisions render the Contract ambiguous (KIU's second argument). Rather, the Contract unambiguously requires KIU to purchase primary all-risk builders risk insurance and Mears to purchase builders risk fire and extended coverage insurance (a limited coverage as set forth below). KIU's argument that the Court should interpret these provisions as somehow contradictory—rather than interpreting them pursuant to their plain language—is inconsistent with well-settled law on contractual interpretation. Indeed, the Contract plainly contemplated more than one builders risk insurance policy being purchased, because it required the builders risk policy purchased by KIU to be *primary*. If only one party were required to purchase builders risk insurance—as KIU contends—then it would make no sense to require one policy to be primary.

Further, KIU's waiver argument fails because KIU has not created (and cannot create) a genuine issue of material fact as to whether Mears voluntarily and intentionally relinquished its right to enforce the Contract. Indeed, KIU's entire waiver argument is based on its own breach of the provision of the Contract requiring KIU to provide Mears with a certificate of insurance. In KIU's argument, that breach somehow implicitly triggered an affirmative obligation on the part of Mears to demand a COI which, if not acted on by Mears within some unspecified time, constituted an implicit waiver of Mears' right to receive a COI, an implicit waiver of Mears' right to enforce KIU's express obligation to provide a primary builder's all risk insurance policy covering the project and designating Mears as a loss payee, and an implicit release of KIU's contractual obligation to provide such insurance. KIU's sole contractual basis for that entire series of inferences is Section 5.03C of the General Conditions of the Contract, which provides that KIU's

2

failure to demand a certificate of insurance shall not be construed as a waiver of Mears' obligation to maintain such insurance. The Contract affirmatively requires KIU to provide a certificate of insurance; it does not require Mears to demand one. KIU's failure to provide one is a breach of contract. As KIU acknowledges, the Contract is silent with respect to the consequences of Mears not demanding a certificate of insurance.  IU interprets that silence to mean that, unless Mears demands a certificate, KIU is released from its obligation to provide primary builder's all risk insurance covering the project and naming Mears as a loss payee, and Mears tacitly waives all of its rights with respect thereto forever. The Contract itself says no such thing.

Finally, KIU argues that Mears has no damages because—even if KIU had purchased primary builders risk insurance as required by the Contract—a faulty workmanship exclusion would have applied, and therefore Mears has no damages. But this argument is entirely irrelevant to Mears' motion, which seeks summary judgment only as to the narrow question of whether the Contract required KIU to purchase primary builders risk insurance for the project, and KIU failed to do so. Allegations regarding faulty workmanship and the extent of Mears' damages do not need to be resolved in order for the Court to rule on whether the Contract required KIU to provide primary builder's risk insurance.

## II. Argument

### A. The Contract unambiguously required KIU to provide *primary* builders risk insurance.

KIU does not contest Mears' assertion that KIU failed to purchase primary builders risk insurance on an all-risk form and name Mears as a loss payee. *See generally* ECF No. 21. Instead, KIU argues only that it did not have the obligation to purchase such insurance. Thus, the only remaining issue that must be resolved for purposes of Mears' motion is determining whether the Contract unambiguously required KIU to purchase such a policy, as Mears contends.

3

Under South Carolina law governing contract interpretation, "[d]ocuments will be interpreted so as to give effect to all of their provisions, if practical." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 498, 649 S.E.2d 494, 502 (Ct. App. 2007). Further, "[i]t is fundamental that in the construction of the language of a [contract], it is proper to read together the different provisions therein dealing with the same subject matter, and where possible, all the language used should be given a reasonable meaning." *Id.*, 374 S.C. at 498-99 (quoting *Brady v. Brady*, 222 S.C. 242, 246-47, 72 S.E.2d 193, 195 (1952)); *see also Bank of Commerce v. Maryland Fin. Bank*, 639 F. App'x 929, 933 (4th Cir. 2016) ("When interpreting a contract, a court must read the contract in its entirety, 'and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.' The court should strive to read the contract provisions 'harmoniously, and not construe them either to render one nugatory or to create unnecessary conflict among them.'") (internal citations omitted). Moreover, "[p]arties are governed by their outward expressions and the court is not at liberty to consider their secret intentions." *Ecclesiastes Prod. Ministries*, 374 S.C. at 498, 649 S.E.2d at 501.

Here, KIU asks the Court to ignore the plain language of the Contract requiring KIU to purchase primary builders risk insurance or, in the alternative, to find an ambiguity where none exists. Such a result would be squarely at odds with the law of contract interpretation as described above. The Court can, and should, interpret the Contract to give effect to all its provisions. That is, the Court should hold that KIU was required to purchase *primary* builders risk insurance, as specifically required by Article 5 of the General Conditions. A requirement that Mears *also* purchase limited builders risk insurance—but with no requirement that such insurance be primary, and with different requirements regarding the details of the insurance—can easily be read

4

harmoniously with the provision requiring KIU to purchase primary builders risk insurance. Indeed, there is no evidence whatsoever within the four corners of the Contract indicating that the provision requiring KIU to purchase primary builders risk insurance means anything other than what it says.

Notably, KIU does not and cannot argue that the Special Conditions require Mears to provide *primary* builders risk insurance. To the contrary, the Contract unambiguously provides that KIU was the only party who had any obligation to provide *primary* builders risk insurance.

- Article 5.06 of the General Conditions says KIU will insure the Work through a Builder's Risk "all-risk" policy, and that KIU would include the interest of Mears in such insurance and name Mears as a loss payee. *See* ECF No. 18-1 at 72.

- Article 5.07 of the General Conditions say the policies purchased by Owner under 5.06 "will provide *primary* coverage for all losses and damages caused by the perils or causes of loss covered thereby." (emphasis added). *See id.* at 73.

- Articles 5.06 and 5.07 apply "[u]nless otherwise provided in the Supplementary Conditions" of the Contract. *Id.* at 72. The Supplementary Conditions do not in any way change KIU's obligation to provide *primary* Builder's Risk insurance.

KIU seeks to avoid this unambiguous language based on the Special Conditions to the Contract. This argument is without merit for numerous reasons. First, the Special Conditions do not say Mears will provide *primary* builders risk coverage. The Special Conditions say Mears will provide "Builder's Risk (Fire and Extended Coverage)." There is nothing in the Special Conditions (or anywhere else in the Contract) that says such insurance will be primary, or that modifies KIU's obligation to provide *primary builders risk all-risk* insurance. Only KIU was required to provide primary builders risk insurance under the plain and unambiguous provisions of the Contract.

5

Second, according to the plain language of Article 5.06, its requirements applied "[u]nless otherwise provided in the Supplementary Conditions." *Id.* at 72. As set forth above, the Contract Supplementary Conditions do not modify KIU's obligation to provide primary builders risk insurance. This express language contravenes KIU's argument that the Special Conditions modify the General Condition insurance provisions. The General Conditions provide for modification by the Supplementary Conditions. Similarly, the Supplementary Conditions say they amend or supplement the General Conditions and that all provisions not so amended or supplemented remain in full force and effect. The Supplementary Conditions did not modify KIU's obligation to provide *primary* builders risk insurance. Nor did the Special Conditions. In any event, even if the Special Conditions modified the General Conditions, no provision in the Special Conditions contradicts the provision in the General Conditions requiring KIU to provide *primary* builder's risk insurance.

In support of its argument that the Special Conditions modify the General Conditions, KIU relies upon the affidavit of Ronald Rakich, a retained expert, who says on the one hand that interpreting the contract is "not within my qualifications or assignment" and, on the other hand, that, "[i]n this case, the Special Conditions modify the Supplementary Conditions, which in turn modify the General Conditions." ECF No. 21-5, Rakich Aff. ¶ 11. But even if Mr. Rakich were correct, and the Special Conditions modify the General Conditions as he contends, the provision in the Special Conditions regarding builders risk insurance does not contradict the provision in the General Conditions requiring KIU to purchase *primary* builders risk insurance. Further, Mears objects to this opinion because the witness, by his own admission, is not qualified to offer it, the opinion is not based on the facts of this case or any testimony of any person actually involved in any of the negotiations, and his opinion is a conclusion of law outside the scope of expert testimony.

6

Similarly, KIU relies upon the affidavit of Mark Yodice, an engineer with Thomas & Hutton Engineering, who was the record engineer for the project. Yodice admits he "did not actively participate in the negotiations" of the contract. Instead, "[a]fter KIU and Mears finalized the terms of the contract, [he] assembled the final contract documents." ECF No. 21-4, Yodice Aff. ¶ 10. Yodice then, without any evidentiary support or establishment of his qualifications, says, "Where there are conflicting provisions between the Standard General Conditions and the Special Conditions, I consider the Special Conditions to control." Again, even if Mr. Yodice were correct, and the Special Conditions modify the General Conditions as he contends, the provision in the Special Conditions regarding builders risk insurance does not contradict the provision in the General Conditions requiring KIU to purchase primary builders risk insurance. Further, Mears objects to this opinion because the witness has not been shown by qualifications, training or experience to be qualified to give the opinion, the opinion is not based on the facts of this case or any testimony of any person actually involved in any of the negotiations, and his opinion is a conclusion of law outside the scope of expert testimony.

KIU's argument that it was not required to provide primary builder's risk insurance is based on the premise that Special Condition 7 not only modifies the General Conditions regarding builders risk, but completely *deletes and replaces* them. Moreover, given the undisputed fact that the Special Conditions do not state that they are intended to delete and replace the General Conditions requiring KIU to provide primary builder's risk insurance covering the project and designating Mears as a loss payee, KIU is left to argue that four lines in Special Condition 7 *implicitly* deleted and replaced the 2.5 pages of the General Conditions which in great detail expressly require KIU to provide primary builder's risk insurance covering the project and designating Mears as a loss payee. If the parties had intended to delete and replace such an

7

important provision, they would have done so clearly, unambiguously, and expressly. Indeed, when the Supplementary Conditions were intended to delete and replace provisions of the General Conditions, it was done <u>explicitly</u>—by unambiguous reference to the specific provision of the General Conditions that was being deleted and replaced. For example, see Supplementary Condition SC-10.05, which expressly deletes and replaces General Condition 10.05. Special Condition 7 was intended to add a requirement that Mears provide builder's risk insurance (fire and standard extended coverage). There is no evidence whatsoever that it was intended to delete and replace KIU's obligation to provide primary builder's all risk coverage.

Finally, KIU attempts to avoid the unambiguous language of the Contract by citing an email exchanged between the parties dated November 25, 2015, before the Contract was executed effective January 7, 2016. *See* ECF No. 18-1, Contract, at 00506-8 ("This Agreement will be effective on January 7, 2016 (which is the Effective Date of this Agreement)." Mr. Yodice acknowledges this email exchange was "during the negotiation process," and it was not with Mr. Yodice, but between Mears and KIU. ECF No. 21-4, Yodice Aff. at ¶ 15. But it is well-settled that the parol evidence rule prohibits the consideration of such evidence for purposes of interpreting an unambiguous contract. Mears objects to this email as parol evidence and inadmissible to vary the terms of an unambiguous contract. As recently explained by the South Carolina Supreme Court:

> The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument. Where an agreement is clear on its face and unambiguous, the court's only function is to interpret its lawful meaning and the intent of the parties *as found within the agreement*.

*Rodarte v. Univ. of S.C.*, 419 S.C. 592, 603, 799 S.E.2d 912, 917 (2017) (internal citations and quotations omitted) (emphasis in original). Here, the Contract between the parties unambiguously

8

requires KIU to purchase *primary* builders risk insurance. An email exchange between the parties to the contract during negotiations is inadmissible and cannot change the unambiguous language of the Contract.

Moreover, the cited Mears email does not add anything to Mears' obligations under Special Condition 7. To the contrary, the email merely repeats the undisputed fact that Mears is providing builder's risk insurance, as required by Special Condition 7. Mears has fully complied with that requirement. There is nothing in the email which could conceivably be construed to mean that Mears is thereby agreeing to delete and replace KIU's express contractual requirement to provide *primary* builders all risk coverage of the project and to designate Mears as a loss payee. The General Conditions provide KIU is providing *primary* all-risk builders risk coverage and the Special Conditions say Mears is also providing a limited builders risk coverage. Since both parties are providing builders risk insurance, it is necessary to determine which of the policies is primary. The Contract unambiguously provides that KIU's insurance will be *primary*.

The fact that the Contract expressly requires the KIU policy to be "primary" also refutes any argument that the parties intended there to be only one builder's risk policy. There would be no need to specify a *primary* policy unless more than one policy was contemplated.

### B. KIU's breach of the Contract provision requiring KIU to provide Mears with a certificate of insurance does not somehow result in a waiver of Mears' right to enforce the Contract.

KIU also argues that Mears waived "any potential right to demand . . . insurance coverage from KIU" because Mears did not request that KIU provide a certificate of insurance showing builders risk coverage. ECF No. 21 at 4, 9-10. This argument is without merit.

The Contract required KIU to provide Mears with an insurance certificate—the Contract *did not* require Mears to demand an insurance certificate from KIU. *See* ECF No. 21 at 9 (quoting

9

relevant provisions). Indeed, *the Contract did not even expressly entitle Mears to demand a copy of the certificate of insurance*, presumably because the Contract placed the burden on KIU to provide the certificate of insurance (COI) to Mears such that no demand by Mears would have been necessary if KIU had simply complied with the Contract.

Contrary to the most fundamental concepts of contract law, KIU now seeks to *benefit* from its breach of contract. In its effort to do so, it arbitrarily redefines and reverses KIU's contractual duty to provide a COI into Mears' supposed duty to demand that KIU provide a COI. Having thus imaginatively reversed the duty from KIU to Mears without reason or justification, and having thereby changed Mears' right to receive a COI into a duty to demand one, KIU then argues that Mears breached that fictional duty and that Mears thereby intentionally and voluntarily released KIU from the contractual obligation to provide primary builders risk insurance. But Mears had no obligation to demand a COI from KIU. KIU had an obligation to provide a primary builders risk policy for Mears' benefit and an obligation to provide Mears with a COI. KIU breached both obligations. KIU now makes the untenable argument that it was released from its obligation to provide primary builder's risk insurance by its own breach of contract—that is, by failing to provide a COI to Mears, KIU somehow imposed an implicit duty on Mears to demand a COI from KIU. In KIU's argument, its express obligation to provide a COI to Mears disappears and is replaced by an implicit obligation on the part of Mears to demand a COI from Mears. KIU thereby purports to convert its breach of contract (by failing to provide a COI) into a breach by Mears of an unstated obligation to demand a COI, and portrays Mears' supposed breach of this non-existent duty as a waiver of its rights to enforce KIU's contractual obligation to provide primary builder's risk insurance covering the project and designating Mears as a loss payee, and releasing KIU from

all of its contractual obligation with respect thereto. KIU's argument is obviously and fatally flawed.

The law on waiver is well-settled. "Waiver is a voluntary and intentional abandonment or relinquishment of a known right." *Eason v. Eason*, 384 S.C. 473, 480, 682 S.E.2d 804, 807 (2009). Notably, and not surprisingly, KIU does not cite—much less attempt to apply—this well-settled law in its memorandum. Indeed, in its memorandum, KIU does not argue, nor could it argue, that Mears voluntarily and intentionally relinquished a known right. KIU breached the provision requiring that it provide Mears with a certificate of insurance. This breach by KIU was not somehow a voluntary and intentional abandonment of a right by Mears.

In support of this waiver argument, KIU cites no case law or facts. Instead, KIU relies entirely on Section 5.03 to the Contract, which provides that KIU's failure to demand a certificate of insurance *shall not* be construed as a waiver of Mears' obligation to maintain such insurance. *See* ECF No. 21 at 9. KIU argues that, because no comparable provision exists with respect to Mears, the failure of Mears to demand a certificate of insurance *is* a waiver of Mears' right to enforce the provision of the Contract requiring KIU to purchase insurance—even though the Contract required KIU to provide the certificate of insurance without any demand from Mears. But KIU does not explain why this is so. The absence of such a provision establishes, at most, that Mears cannot argue that KIU is *contractually prohibited* from making a waiver argument. But even if KIU is not contractually prohibited from making a waiver argument, all of KIU's work is still in front of it. That is, KIU still is required to establish with evidence that Mears voluntarily and intentionally abandoned its right to enforce the Contract. KIU has not cited any such evidence.

11

### C. KIU's defective workmanship argument is not relevant to Mears' motion for partial summary judgment.

Finally, KIU argues that Mears has no damages because—even if KIU had purchased primary builders risk insurance as required by the Contract—a faulty workmanship exclusion would have applied, and therefore Mears has no damages. ECF No. 21 at 10. But this argument is not responsive to Mears' motion, which seeks summary judgment only as to the questions of whether KIU was required by contract to purchase *primary* builders risk insurance which named Mears as loss payee, and whether KIU breached the contract by failing to do so. Whether such a policy would have included an exclusion for faulty workmanship, the scope of any such exclusion, whether Mears engaged in faulty workmanship, and the extent of Mears' damages are separate issues that are not relevant to Mears' motion. Thus, while Mears disagrees with much of what KIU argues in this section of its memorandum as to why Mears supposedly engaged in faulty workmanship, these are factual issues that have nothing to do with Mears' motion. The Court can and should decide the narrow issue of contractual interpretation presented in Mears' motion for partial summary judgment.

## III. Conclusion

For the foregoing reasons, and for the reasons stated in Mears' Motion for Partial Summary Judgment, Mears respectfully requests that the Court grant Mears partial summary judgment by declaring as a matter of law that KIU had the obligation to purchase and maintain primary Builder's Risk insurance on an all-risk form for the project and name Mears as a loss payee, and that KIU breached the contract by failing to do so.

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/*PATRICK C. WOOTEN

G. Mark Phillips
Federal Bar No. 3051
Patrick C. Wooten
Federal Bar No. 10399
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC  29401-2239
(843) 853-5200
mark.phillips@nelsonmullins.com
patrick.wooten@nelsonmullins.com

**VORYS, SATER, SEYMOUR and PEASE LLP**
Richard A. Schwartz
Federal Bar No. 5344
David Louie
Federal Bar No. 1126301
700 Louisiana, Suite 4100
Houston, Texas 77002
Telephone: 713-588-7016
Facsimile: 713-588-7081
dschwartz@vorys.com
dllouie@vorys.com

*Attorneys for Plaintiff Mears Group, Inc.*

September 14, 2018
Charleston, South Carolina