**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| MEARS GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-02418-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| KIAWAH ISLAND UTILITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The following matter is before the court on plaintiff Mears Group, Inc.'s

("Mears") partial motion for summary judgment, ECF No. 18, and defendant Kiawah

Island Utility, Inc's ("KIU") cross-motion for summary judgment, ECF No. 25. For the

reasons set forth below, the court grants in part and denies in part Mears's partial motion

for summary judgment and denies KIU's cross-motion for summary judgment.

## I.  BACKGROUND

This case arises out of the construction of a pipeline running from Kiawah Island

to Johns Island ("the Project"). KIU, the owner of the Project, entered into a contract

("the Contract") with Mears to construct the pipeline. The Project consisted of using

horizontal directional drilling to bore an underground hole and then pulling pipe through

the hole. During this process, the pipe got stuck in the borehole, and Mears's work was

lost. As a result, Mears had to drill a second borehole and install a new section of

pipeline.

Mears presented a claim for the lost work to KIU to be submitted to KIU's

builder's risk insurance carrier. Mears contends that the Contract required KIU to obtain

builder's risk insurance and name Mears as a loss payee. KIU disputes whether the

1

Contract required KIU to provide builder's risk insurance for the Project, but regardless, KIU submitted Mears's claim under a property insurance policy held by KIU's parent, SouthWest Water Company. That policy is supplied by Westport Insurance Corporation ("Westport"). KIU also demanded that Mears submit a claim to its own builder's risk insurance carrier, which KIU claims that Mears still has not done. KIU explains that Westport denied the claim, saying that (1) the Contract required Mears, not KIU, to obtain builder's risk insurance, and (2) the cause of the lost work was a result of Mears's faulty workmanship, which is excluded from coverage. Westport determined that KIU's policy was "excess to" any of Mears's insurance policies, meaning KIU's policy would not pay until Mears's insurance policies limits are exhausted. ECF No. 18 at 9. Mears alleges that as a result of KIU's failure to procure builder's risk insurance, Mears was not provided the builder's risk insurance coverage it bargained for and has now suffered over $7 million of damages, the amount of money it cost Mears to re-drill the second borehole and obtain additional pipe.

The dispute in this case centers around the Contract itself. The parties used a standard Engineers Joint Contract Documents Committee ("EJCDC") form to draft the Contract. The Contract consists of, among other documents, (1) General Conditions, (2) Supplementary Conditions, and (3) Special Conditions. The General Conditions contain form contract language, while the Supplementary Conditions amend or supplement the General Conditions. The Special Conditions provide additional conditions to the Contract, but whether they supersede the General Conditions or merely add to them is at issue here.

The first set of clauses relevant here are in the General Conditions. Article 5.06, with emphasis added by Mears, states:

5.06. Property Insurance

A. Unless otherwise provided in the Supplementary Conditions, **Owner shall purchase and maintain property insurance upon the Work at the Site in the amount of the full replacement cost thereof** (subject to such deductible amounts as may be provided in the Supplementary Conditions or required by Laws and Regulations). **This insurance shall:**

1. **include the interests of Owner, Contractor,** Subcontractors, and Engineer, and any other individuals or entities identified in the Supplementary Conditions, and the officers, directors, members, partners, employees, agents, consultants, and subcontractors of each and any of them, **each of whom is deemed to have an insurable interest and shall be listed as a loss payee;**

2. **be written on a Builder's Risk "all-risk" policy form that shall at least include insurance for physical loss or damage to the Work,** temporary buildings, falsework, and materials and equipment in transit, and shall insure against at least the following perils or causes of loss: fire, lightning, extended coverage, theft, vandalism and malicious mischief, earthquake, collapse, debris removal, demolition occasioned by enforcement of Laws and Regulations, water damage (other than that caused by flood), and such other perils or causes of loss as may be specifically required by the Supplementary Conditions.

3. **include expenses incurred in the repair or replacement of any insured property (including but not limited to fees and charges of engineers and architects);**

4. **cover materials and equipment stored at the Site or at another location that was agreed to in writing by Owner prior to being incorporated in the Work,** provided that such materials and equipment have been included in an Application for Payment recommended by Engineer; . . . .

ECF No. 18-1 at 73. The second relevant provision in the General Conditions, with emphasis added by Mears, is as follows:

3

5.07   Waiver of Rights

      A.   **Owner and Contractor intend that all policies purchased in accordance with Paragraph 5.06 will protect Owner, Contractor,** Subcontractors, and Engineer, and all other individuals or entities identified in the Supplementary Conditions as loss payees (and the officers, directors, members, partners, employees, agents, consultants, and subcontractors of each and any of them) in such policies and **will provide primary coverage for all losses and damages caused by the perils or causes of loss covered thereby.** All such policies shall contain provisions to the effect that in the event of payment of any loss or damage the insurers will have no rights of recovery against any of the insureds or loss payees thereunder. Owner and Contractor waive all rights against each other and their respective officers, directors, members, partners, employees, agents, consultants and subcontractors of each and any of them for all losses and damages caused by, arising out of or resulting from any of the perils or causes of loss covered by such policies and any other property insurance applicable to the Work; and, in addition, waive all such rights against Subcontractors and Engineer, and all other individuals or entities identified in the Supplementary Conditions as loss payees (and the officers, directors, members, partners, employees, agents, consultants, and subcontractors of each and any of them) under such policies for losses and damages so caused. None of the above waivers shall extend to the rights that any party making such waiver may have to the proceeds of insurance held by Owner as trustee or otherwise payable under any policy so issued.

Id. at 74.  Mears also cited to Section 5.04 of the General Conditions at the hearing on the

motions, which provides:

5.04   Contractor's Insurance

      A. Contractor shall purchase and maintain such insurance as is appropriate for the Work being performed and as will provide protection from claims set forth below which may arise out of or result from Contractor's performance of the Work and Contractor's other obligations . . .

            5. claims for damages, **other than to the Work itself**, because of injury to or destruction of Tangible property wherever located, including loss of use resulting therefrom . . . .

4

Id. at 72 (emphasis added by the court). Mears explained that "the Work itself" falls

under the coverage of builder's risk insurance. Hearing Tr. 7:11–17. The final General

Conditions clause relevant here is relied upon by KIU and is as follows:

5.03 Certificates of Insurance

A. Contractor shall deliver to Owner, with copies to each additional insured and loss payee identified in the Supplementary Conditions, certificates of insurance (and other evidence of insurance requested by Owner or any other additional insured) which Contractor is required to purchase and maintain.

B. Owner shall deliver to Contractor, with copies to each additional insured and loss payee identified in the Supplementary Conditions, certificates of insurance (and other evidence of insurance requested by Contractor or any other additional insured) which Owner is required to purchase and maintain.

C. Failure of Owner to demand such certificates or other evidence of Contractor's full compliance with these insurance requirements or failure of Owner to identify a deficiency in compliance from the evidence provided shall not be construed as a waiver of Contractor's obligation to maintain such insurance.

Id. at 71.

The Supplementary Conditions contain additional insurance coverage

requirements for Mears. Specifically, they require that Mears provide and maintain

commercial general liability insurance, business automobile liability insurance, worker's

compensation insurance, and umbrella excess liability insurance, as well as requiring

Mears to provide certificates of insurance and the required endorsements to KIU. Id. at

125–26.

The only Special Condition discussed by the parties requires Mears to obtain

certain insurance. It states as follows:

SC-7 CONTRACTOR'S AND SUBCONTRACTOR'S INSURANCE: The Contractor shall not commence work under this contract until obtaining all

the insurance required under this paragraph and such insurance has been accepted by the Owner, nor shall the Contractor allow any Subcontractor to commence work on a subcontract until the insurance required of the Subcontractor has been so obtained and accepted.

    a.   Builder's Risk Insurance (Fire and Extended Coverage): The Contractor shall have adequate fire and standard extended coverage, with a company or companies acceptable to the Owner, in force on the project. The provisions with respect to Builder's Risk Insurance shall in no way relieve the Contractor of its obligation of completing the work covered by the Contract.

    b.  Proof of Carriage of Insurance: The Contractor shall furnish the Owner with certificates showing the type, amount, class of operations, effective dates, and date of expiration of policies. Whenever possible, such certificates shall contain substantially the following statement: "The insurance covered by this certification shall not be cancelled or materially altered, except after ten (10) days written notice has been received by the Owner."

    c.   Other insurance requirements are listed in the supplementary conditions.

Id. at 118. Finally, as a general matter, the Contract indicates that it "is to be governed by the law of the state in which the Project is located," which is South Carolina. Id. at 116.

Mears filed the instant suit on September 8, 2017 alleging KIU breached the Contract by failing to obtain builder's risk insurance and seeking a declaratory judgment that KIU failed to comply with its insurance obligations. Mears subsequently filed its motion for partial summary judgment[1] on its claim for declaratory judgment and breach of contract claim on August 3, 2018. ECF No. 18. KIU responded to the motion on August 31, 2018, ECF No. 21, to which Mears replied on September 14, 2018, ECF No. 26. KIU separately filed a cross-motion for summary judgment on September 10, 2018. ECF No. 25. Mears responded to KIU's cross-motion on September 24, 2018, ECF No.

_____

[1] Mears titles its motion as one for "partial" summary judgment, but it seeks summary judgment on both of its two causes of action—breach of contract and declaratory judgment.

33, and KIU replied on October 4, 2018, ECF No. 36. The court held a hearing on the motions on January 16, 2019. The motions are now ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III. DISCUSSION

The arguments made in the briefing on Mears's motion for partial summary judgment and the briefing on KIU's cross-motion for summary judgment are largely the same. In Mears's motion for partial summary judgment, Mears argues that the Contract clearly requires KIU to obtain primary builder's risk insurance naming Mears as a loss

payee.  Mears notes that this requirement, found in the General Conditions, is subject to additional Supplementary Conditions, but it then explains that none of the Supplementary Conditions in the Contract alter KIU's obligation to obtain primary builder's risk insurance.  Moreover, Mears asserts that while the Special Conditions do require Mears to obtain a type of builder's risk insurance, the requirement only applies to fire and extended coverage builder's risk insurance and does not supersede the General Condition requirement that KIU obtain primary builder's risk insurance.

KIU responds with an alternative interpretation of the Contract.  KIU contends that while the General Conditions do contain a clause requiring KIU to obtain primary builder's risk insurance, the Special Condition clause either (1) supersedes the clause requiring KIU to obtain builder's risk insurance, meaning Mears was the only party required to obtain builder's risk insurance, or (2) contradicts the General Conditions clause, leaving the Contract ambiguous and allowing introduction of parol evidence, which shows that Mears was the party required to obtain builder's risk insurance.  KIU also asserts that Mears waived its right to demand insurance coverage because Mears did not demand that KIU provide Mears with certificates of insurance prior to beginning work on the Project.  Finally, KIU argues that regardless of KIU's insurance obligation under the Contract, Mears cannot succeed in this action because Mears's $7 million worth of damage was a result of Mears's faulty workmanship, which is excluded from KIU's insurance coverage.

KIU's cross-motion for summary judgment reiterates its contract interpretation and waiver arguments in its response to Mears's partial motion for summary judgment.  Namely, KIU argues that the Special Conditions supersede the General Conditions.

Alternatively, KIU contends that because the Special Conditions and General Conditions conflict, the Contract is ambiguous and extrinsic evidence proves Mears intended to provide builder's risk insurance. Finally, KIU argues that Mears waived its right to demand that KIU provide builder's risk insurance. In response, Mears incorporates the responses it made to these arguments in previous briefing. Mears also argues that KIU improperly discusses extrinsic evidence because the Contract is unambiguous, but that if the court finds that the Contract is ambiguous, then the matter is not proper for summary judgment.

Because the issues in both the motion for partial summary judgment and cross-motion for summary judgment are the same, the court will consider the two motions together, asking whether full or partial summary judgment in favor of either party is currently appropriate. The court finds that the Contract unambiguously requires KIU to obtain primary builder's risk insurance and grants summary judgment as to Mears's declaratory judgment claim. The court denies summary judgment as to Mears's breach of contract claim because there is a genuine issue of material fact as to whether KIU's contract breach caused Mears to be damaged, and the court denies KIU's cross-motion for summary judgment.

## A.    Relationship between Special Conditions and General Conditions

The key issue in this dispute is the relationship between the General Conditions and the Special Conditions. Unfortunately, the Contract does not explain the relationship between the General Conditions and the Special Conditions. Mears asserts that Article 5.06 of the General Conditions unambiguously establishes that KIU is responsible for obtaining primary builder's risk insurance, and that Special Condition SC-7 ("SC-7")

9

provides an <u>additional</u> requirement that Mears obtain adequate fire and standard extended builder's risk insurance coverage. In opposition, KIU argues that Special Condition SC-7 <u>supersedes</u> the General Conditions, making Mears the sole party responsible for obtaining builder's risk insurance. Alternatively, KIU contends that SC-7 and the General Conditions conflict, making the Contract ambiguous. Therefore, the question before the court is whether the Special Conditions add to the General Conditions, supersede the General Conditions, or conflict with the General Conditions. The court finds the Special Conditions add to the General Conditions, meaning that under the Contract, KIU was responsible for obtaining primary builder's risk insurance, and Mears was required to obtain additional fire and extended coverage builder's risk insurance.

A federal court sitting in diversity should use the federal summary judgment standard involving contract interpretation and ambiguity. <u>See</u> <u>World-Wide Rights Ltd. P'ship v. Combe Inc.</u>, 955 F.2d 242, 245 (4th Cir. 1992); <u>Monsanto Co. v. ARE-108 Alexander Road, LLC</u>, 632 F. App'x 733, 736 (4th Cir. 2015); <u>Keystone Ne., Inc. v. Keystone Retaining Wall Sys., LLC</u>, 2015 WL 1186398, at *6 (D.S.C. March 16, 2015), amended on reconsideration on other grounds, 2015 WL 1400102 (D.S.C. March 25, 2015). "A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation." <u>World-Wide Rights Ltd. P'ship</u>, 955 F.2d at 245. The court must first determine if the contract at issue is ambiguous. <u>Id.</u> If "the contract is unambiguous on the dispositive issue," it may grant summary judgment. <u>Id.</u> However, if the court determines that the contract is ambiguous, "it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant

summary judgment on that basis." Id. (citing Jaftex Corp. v. Aetna Cas. and Surety Co., 617 F.2d 1062, 1063 (4th Cir. 1980)).[2]  But if the review of the extrinsic evidence still "leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact."  Id. "Therefore, summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence."  Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc., 476 F.3d 231, 235 (4th Cir. 2007).

---

[2]This is the opposite of South Carolina law.  Under South Carolina law, if a court finds a contract to be ambiguous within the four corners of the contract, it must deny summary judgment.  S.C. Dep't of Nat. Res. v. Town of McClellanville, 550 S.E.2d 299, 303 (S.C. 2001).  The parties disagree on whether federal or state law should be used, and the District Court of South Carolina has been inconsistent in which law it applies on this issue.  Some cases use the federal standard and consider extrinsic evidence when the contract is ambiguous.  Seventeen S., LLC v. D.R. Horton, Inc., 2016 WL 2610075, at *3 (D.S.C. May 6, 2016); Keystone Ne., Inc., 2015 WL 1186398, at *6; Hansa Meyer Transport GMBH & Co. v. Norfolk S. Ry. Co., 2008 WL 341541, at *9–10 (D.S.C. Feb. 5, 2008).  Other cases use South Carolina law to deny summary judgment when the contract is ambiguous and do not consider extrinsic evidence.  Osborn v. Univ. Med. Assocs. of Med. Univ. of S.C., 278 F. Supp. 2d 720, 738 (D.S.C. 2003); Seventeen S., LLC v. D.R. Horton, Inc., 2015 WL 337639, at *12 (D.S.C. Jan. 26, 2015); Harbour Town Yacht Club Boat Slip Owners' Ass'n v. Safe Berth Mgmt., Inc., 421 F. Supp. 2d 908, 913 (D.S.C. 2006).  In particular, Osborn, 278 F. Supp. 2d 720, was decided by this court.

The court believes this inconsistency arises because it is unclear whether the automatic denial of summary judgment with ambiguous contracts is substantive or procedural under Erie principles.  Despite this inconsistency, the court finds this standard to be procedural, and therefore it is proper to use the federal standard articulated by the Fourth Circuit and consider extrinsic evidence if such evidence definitively resolves the ambiguity.  Moreover, the Fourth Circuit has continued to employ federal law on this specific issue.  See Washington Metro. Area Transit Auth. v. Potomac Inv. Props., Inc., 476 F.3d 231, 235 (4th Cir. 2007) ("[S]ummary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence."); Sheridan v. Nationwide Ret. Sols., 313 F. App'x 615, 619 (4th Cir. 2009) (vacating summary judgment because the contract at issue was ambiguous and noting while the court may consider extrinsic evidence, it declined to do so here because the parties both took the position that the contract was unambiguous).

## 1. Ambiguity

The Contract is governed by South Carolina law, which is used to determine whether a contract is ambiguous. "A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation." S.C. Dep't of Nat. Res. v. Town of McClellanville, 550 S.E.2d 299, 302 (S.C. 2001). Ambiguity exists when considering multiple provisions of a contract together leads to multiple reasonable interpretations. See Hardy v. Aiken, 631 S.E.2d 539, 541–42 (S.C. 2006) (finding a restrictive covenant to be ambiguous because its amendment provision permitted any changes to the covenant while the restrictive covenant itself clearly stated that it expired in twenty-five years and contained no express provision allowing to extend the duration); Cmty. Servs. Assocs., Inc. v. Wall, 808 S.E.2d 831, 836 (S.C. Ct. App. 2017) (finding that the meaning of two paragraphs in a restrictive covenant was ambiguous because they could reasonably be interpreted together to have two different meanings); W. Anderson Water Dist. v. City of Anderson, 790 S.E.2d 204, 208 (S.C. Ct. App. 2016) (finding that "two provisions, considered together, render[ed] the contract reasonably susceptible to at least two interpretations," making the contract ambiguous).

Additional principles of South Carolina contract interpretation dictate that contracts "will be interpreted so as to give effect to all of their provisions, if practical." Reyhani v. Stone Creek Cove Condominium II Horizontal Property Regime, 494 S.E.2d 465, 468 (S.C. Ct. App. 1997) (citing 17A Am. Jur. 2d Contracts § 385 (1991)). As such, "[i]t is fundamental that, in the construction of the language of a contract, it is proper to read together the different provisions therein dealing with the same subject matter, and where possible, all the language used should be given a reasonable meaning." Bluffton

Towne Ctr., LLC v. Gilleland-Prince, 772 S.E.2d 882, 890 (S.C. Ct. App. 2015) (quoting

Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC, 649 S.E.2d 494, 498–99 (S.C.

Ct. App. 2007)). "In construing and determining the effect of a written contract, the

intention of the parties and the meaning are gathered primarily from the contents of the

writing itself, or, as otherwise stated, from the four corners of the instrument." Silver v.

Aabstract Pools & Spas, Inc., 658 S.E.2d 539, 542 (S.C. Ct. App. 2008) (quoting

McPherson v. J.E. Sirrine & Co., 33 S.E.2d 501, 509 (S.C. 1945)). If a contract is

unambiguous, a court must enforce it "according to its terms regardless of its wisdom or

folly, apparent unreasonableness, or the parties' failure to guard their rights carefully."

S.C. Dep't of Transp. v. M & T Enterprises of Mt. Pleasant, LLC, 667 S.E.2d 7, 13 (S.C.

Ct. App. 2008).

KIU first argues that SC-7, which contains Mears's requirement to obtain

builder's risk insurance, supersedes Article 5.06 of the General Conditions, which

requires KIU to obtain primary builder's risk insurance. It is not apparent by the text of

SC-7 that it is meant to supersede the General Conditions because there is no language in

SC-7 explicitly saying so. KIU argues that "[a] reading of the Special Conditions

establishes that the Special Conditions are meant to alter, and take precedence over, the

General Conditions." ECF No. 21 at 5. KIU points to SC-8, which is a hold-harmless

provision that states that the indemnification clause in the General Conditions "shall

exclusively govern," to show that the Special Conditions instruct when General

Conditions are meant to control. Id. KIU notes that SC-7 does not refer to Article 5.06.

As such, KIU argues that because there is no indication that Article 5.06 takes precedence

over SC-7, the inverse is true and SC-7 takes precedence over Article 5.06. However,

there is a third possibility—that the SC-7 and Article 5.06 should be considered together. Indeed, just as KIU argues that Article 5.06 does not take precedence over SC-7 because it does not explicitly say so, it is equally plausible that SC-7 cannot take precedence over Article 5.06 without explicitly stating so.

To support its interpretation that SC-7 supersedes Article 5.06, KIU argues that the Special Conditions modify the Supplementary Conditions, which modify the General Conditions. Applying this theory to this case, KIU argues that SC-7 modifies the insurance requirements in the Supplementary Conditions. The problem with this theory is that the insurance requirements in the Supplementary Conditions do not modify or even address the requirement that KIU obtain primary builder's risk insurance in the General Conditions. The Supplementary Conditions that relate to Mears's insurance obligations require Mears to have commercial general liability insurance, business automobile liability insurance, worker's compensation insurance, and umbrella excess liability insurance, as well as requiring Mears to provide certificates of insurance and the required endorsements to KIU prior to commencing work. ECF No. 18-1 at 124–26. But none of these requirements alter KIU's obligation to obtain builder's risk insurance pursuant to Article 5.06. Indeed, KIU's modification theory supports the finding that KIU is required to obtain primary builder's insurance, in addition to Mears obtaining the insurance listed in the Supplementary Conditions and the fire and extended coverage builder's risk insurance per SC-7.

In arguing that SC-7 supersedes Article 5.06, KIU interprets SC-7 to require builder's risk insurance including fire and extended coverage in an attempt to show that

SC-7 isn't just an additional requirement that Mears obtain a specific type of builder's risk insurance. The court disagrees with this interpretation. SC-7 states:

> Builder's Risk Insurance (Fire and Extended Coverage): The Contractor shall have adequate fire and standard extended coverage, with a company or companies acceptable to the Owner, in force on the project.

ECF No. 18-1 at 118. KIU's interpretation may be reasonable when viewing the title of the clause in isolation. However, the language of the clause provides clarification of the title. The clause states "[t]he Contractor shall have adequate fire and standard extended coverage, with a company or companies acceptable to the Owner, in force on the project." This language is specific to fire and standard extended coverage, not builder's risk insurance in general.

Reviewing other related General Conditions and Special Conditions together indicates that there may be instances where the Special Conditions provide a more specific requirement that supersedes a general requirement in the General Conditions, which is what KIU argues occurs between Article 5.06 and SC-7. For example, Article 2.03 in the General Conditions, titled "Commencement of Contract Times; Notice to Proceed" explains that the Contract Times will begin "to run on the thirtieth day after the Effective Date of the Agreement, or, if a Notice to Proceed is given, on the day indicated in the Notice to Proceed." ECF No. 18-1 at 60. Article 2.04 explains that "Contractor shall start to perform the Work on the date when the Contract Times commence to run." Id. at 61. The corresponding Special Condition, SC-2, states that "[t]he Contractor shall commence work when the Notice of Proceed is issued." Id. at 117. The more general Article 2.03 provided several options for when Contract Times begin, resulting in the Contractor starting the Work, and the more specific SC-2 provides a precise indication of when the Contractor should begin work. As such, the Contractor could not argue that it

was to start work on the thirtieth day after the Effective Date of the Agreement, as provided in the General Conditions, because the Special Conditions more narrowly require that the Contractor must begin work when the Notice of Proceed is issued.

Another example of the relationship between the General Conditions and Special Conditions relates to the definition of the work to be done under the Contract. Article 1.01(a)(50) defines "Work" as:

> The entire construction or the various separately identifiable parts thereof required to be provided under the Contract Documents. Work includes and is the result of performing or providing all labor, services, and documentation necessary to produce such construction, and furnishing, installing, and incorporating all materials and equipment into such construction, all as required by the Contract Documents.

Id. at 58. Given the vagueness of this description, SC-1 provides that "[t]he work consists of installation of approximately 6,300 linear foot 16-inch water main (DIP and PVC), one master metering station and associated appurtenance, incidental construction in accordance with the plans and specifications, and coordination with the directional drill contractor." Id. at 117. Here, the Special Conditions provide greater specificity about the work to be completed under the Contract. It does not necessarily supersede the description of Work in the General Conditions but instead provides more detail as to the type of Work required by the Contract.

While these particular Special Conditions appear to narrow their corresponding General Conditions or provide more specific detail, they do not completely contradict or entirely replace the General Conditions as KIU claims that SC-7 does with Article 5.06. Indeed, at the hearing on the motions, counsel for KIU admitted that there are no other Special Conditions that completely negate a General Condition.

16

KIU also argues that it would be illogical for two parties on a construction project to each purchase builder's risk insurance. As such, KIU argues that giving effect to both SC-7 and Article 5.06 would be unreasonable. However, as counsel for Mears clarified at the hearing, both parties generally have builder's risk insurance, and the purpose of contracting about the issue is to determine which party's builder's risk insurance is primary, and which is secondary. Hearing Tr. 5:4–20. Therefore, it is possible to give effect to both SC-7 and Article 5.06, which would require both KIU and Mears to obtain some sort of builder's risk insurance but designates KIU's builder's risk insurance as primary.

KIU also argues about the process of the contract formation. It explains that the General Conditions are in a PDF format, and that parties edit the General Conditions through the editable Microsoft Word versions of the Supplementary Conditions and Special Conditions, meaning that the Special Conditions should control over the General Conditions. However, when determining whether a contract is ambiguous, the court may only look at the four corners of the contract. See Silver, 658 S.E.2d at 542. Therefore, the court cannot consider this process and must only look to the Contract itself.

In conclusion, the court finds that the Contract can only reasonably be interpreted in one manner—requiring KIU to obtain primary builder's risk insurance through Article 5.06 and additionally requiring Mears to obtain builder's risk insurance for fire and extended coverage through SC-7. Therefore, the court grants summary judgment on Mears's declaratory judgment claim.

### B.  Whether Mears Waived its Right to Demand Insurance Coverage

KIU also argues that Mears waived any potential right it had to demand insurance coverage from KIU.  To support its argument, KIU cites to language in the Contract that requires Mears and KIU to deliver certificates of insurance to each other and that states that KIU's failure to demand insurance certificates from Mears does not waive Mears's obligation to maintain insurance.  <u>See</u> ECF No. 18-1 at 71.  KIU highlights that there is no similar clause protecting Mears if it fails to demand KIU's insurance certificates.  KIU never produced a certificate of insurance to Mears, and given the absence of such provision, KIU claims that Mears's failure to demand KIU's insurance certificate waived Mears's right to demand coverage in the instant case.

Mears disagrees with this interpretation.  First, Mears explains that the Contract did not require Mears to demand insurance certificates from KIU nor did it entitle Mears to demand such certificates.  Mears then points out that KIU breached the contract by not delivering its insurance certificates to Mears and claims that KIU is now trying to benefit from its breach by "impos[ing] an implicit duty on Mears to demand a [certificate of insurance] from KIU."  ECF No. 26 at 10.  Moreover, Mears explains that the law of waiver requires the voluntary and intentional abandonment of a known right, but KIU provides no evidence that Mears voluntarily and intentionally abandoned its right to enforce the Contract.

KUI's argument asks the court to infer Mears's waiver based on the absence of contractual language.  In essence, KIU argues that because there is no clause stating that Mears's failure to demand KIU's insurance certificates shall not be construed as a waiver, then Mears's failure to demand KIU's certificates must be construed as a waiver.  The

language of the Contract simply does not support this conclusion.  As such, the court denies summary judgment as to this issue.

### C.  Whether Builder's Risk Insurance Covers the Loss Claimed by Mears

KIU's final argument is that the loss at issue here was caused by Mears's faulty workmanship, which is not covered by KIU's builder's risk insurance policy.  As such, KIU claims that Mears has not suffered damage from KIU failing to obtain builder's risk insurance, because even if KIU provided coverage, Mears's loss would not be covered. Mears's response to this argument makes clear that it does not agree that faulty workmanship was the cause of the loss, but Mears also explains that this issue is not pertinent to its partial motion for summary judgment specifically on the issue of contract interpretation.

This issue relates to Mears's breach of contract claim.  The elements of an action for breach of contract are (1) the existence of a contract; (2) the contract's breach; and (3) damages caused by such breach.  <u>Allegro, Inc. v. Scully</u>, 791 S.E.2d 140, 146 (S.C. 2016).  KIU is arguing that Mears has failed at establishing the third element because Mears's damage was caused by Mears's faulty workmanship, not by a breach of the Contract.  Mears was damaged because Westport, the insurance company of KIU's parent company, refused primary coverage for the $7 million loss.  Westport denied coverage for two reasons.  Westport determined that (1) KIU was not obligated to provide builder's risk insurance under the Contract; and (2) the loss was caused by Mears's faulty workmanship, which is not covered by KIU's insurance policy.  Based on the parties' arguments about contract interpretation, the court finds that KIU did breach the Contract

by failing to procure primary builder's risk insurance. But that only addresses the first reason why Westport denied coverage, which resulted in Mears's damage.

Indeed, Mears's breach of contract claim is only premised on KIU's failure to procure insurance, not on Westport's decision to deny coverage. Mears alleges that "KIU breached the Contract with Mears by failing to procure a primary builder's risk 'all risk' policy to cover the loss." Compl. ¶ 39. Mears then alleges that "[a]s a result of KIU's breach of contract, Mears has been damaged in the amount of $7,040,105 or such other amount as may be proved at trial." Id. ¶ 40 (emphasis added). However, Mears was damaged because Westport denied coverage for two reasons, one of which being that Westport found that the pipeline loss was caused by Mears's faulty workmanship. Here, there is still an issue of material fact as to whether Westport properly denied coverage due to Mears's faulty workmanship. There is a possibility that even if KIU procured primary builder's risk insurance, the insurance would not have covered the $7 million damage because it was caused by Mears's faulty workmanship. If that were the case, then Mears's damage would not be caused by KIU's breach of contract but instead by Mears's faulty workmanship.

Mears explains that for the purposes of its motion, "[w]hether such a policy would have included an exclusion for faulty workmanship, the scope of any such exclusion, whether Mears engaged in faulty workmanship, and the extent of Mears' damages" are separate and irrelevant issues. ECF No. 26 at 12. However, these issues are relevant to the breach of contract claim on which Mears seeks summary judgment, because they go to show what caused Mears to be damaged.

KIU presents evidence that Mears's workmanship was faulty and therefore not covered by insurance, but it does so only in its response to Mear's motion and in arguing that Mears is not entitled to summary judgment on the breach of contract claim. Because KIU did not argue that Mears's damage was caused by faulty workmanship in its motion for summary judgment, the court cannot grant KIU summary judgment on the breach of contract claim based on the cause of Mears's damage. In response to KIU's argument that Mears's workmanship was faulty, Mears states that it "disagrees with much of what KIU argues" but nevertheless Mears's workmanship is a factual issue "that has nothing to do with Mears' motion." ECF No. 26 at 12. Therefore, there is a genuine issue of material fact as to whether Mears engaged in faulty workmanship that would not have been covered by insurance and caused the $7 million of damage. Mears asks the court to "decide the narrow issue of contractual interpretation," id., so the court will do just that and only hold that the Contract required KIU to procure primary builder's risk insurance. As such, the court denies summary judgment for the breach of contract claim.

**IV.  CONCLUSION**

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** Mears's motion for partial summary judgment and **DENIES** KIU's cross-motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 8, 2019**
**Charleston, South Carolina**