IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MEARS GROUP, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KIAWAH ISLAND UTILITY, INC., )<br>)<br>Defendant. )<br>_____ ) | No. 2:17-cv-02418-DCN<br><br>**ORDER** |

This matter is before the court on defendant Kiawah Island Utility, Inc.'s ("KIU") motion to reconsider, ECF No. 50, and KIU's motion for certificate of appealability, ECF No. 51. For the reasons set forth below, the court denies the motion to reconsider and denies the motion for certificate of appealability.

## I. BACKGROUND

This case arises out of the construction of a pipeline running from Kiawah Island to Johns Island ("the Project"). KIU, the owner of the Project, entered into a contract ("the Contract") with plaintiff Mears Group, Inc. ("Mears") to construct the pipeline. The Project consisted of using horizontal directional drilling to bore an underground hole and then pulling pipe through the hole. During this process, the pipe got stuck in the borehole, and Mears's work was lost. As a result, Mears had to drill a second borehole and install a new section of pipeline.

Mears presented a claim for the lost work to KIU to be submitted to KIU's builder's risk insurance carrier. Mears contends that the Contract required KIU to obtain builder's risk insurance and name Mears as a loss payee. KIU disputes whether the

1

Contract required KIU to provide builder's risk insurance for the Project, but regardless, KIU submitted Mears's claim under a property insurance policy held by KIU's parent, SouthWest Water Company. That policy is supplied by Westport Insurance Corporation ("Westport"). KIU also demanded that Mears submit a claim to its own builder's risk insurance carrier, which KIU claims that Mears still has not done. Westport denied the claim. Mears alleges that as a result of KIU's failure to procure builder's risk insurance, Mears was not provided the builder's risk insurance coverage it bargained for and has now suffered over $7 million of damages, the amount of money it cost Mears to re-drill the second borehole and obtain additional pipe.

The dispute in this case centers around the Contract itself. The parties used a standard Engineers Joint Contract Documents Committee ("EJCDC") form to draft the Contract. The Contract consists of, among other documents, (1) General Conditions, (2) Supplementary Conditions, and (3) Special Conditions. The court's March 8, 2019 order ("the Order") provides greater detail on the contractual clauses at issue here, but for the purposes of this order, the court will briefly review the relevant clauses. The first is Article 5.06 in the General Conditions, which requires KIU to "purchase and maintain property insurance upon the Work at the Site in the amount of the full replacement cost thereof." ECF No. 18-1 at 73. Article 5.06 further requires that "[t]his insurance shall . . . be written on a Builder's Risk 'all-risk' policy form that shall at least include insurance for physical loss or damage to the Work . . . ." Id. Article 5.07 of the General Conditions then states that "Owner and Contractor intend that all policies purchased in accordance with Paragraph 5.06 will protect Owner, Contractor . . . and will provide

primary coverage for all losses and damages caused by the perils or causes of loss covered thereby." Id. at 74.

The only Special Condition discussed by the parties, SC-7, requires Mears to obtain certain insurance. The portions relevant here state:

> SC-7 CONTRACTOR'S AND SUBCONTRACTOR'S INSURANCE: The Contractor shall not commence work under this contract until obtaining all the insurance required under this paragraph and such insurance has been accepted by the Owner, nor shall the Contractor allow any Subcontractor to commence work on a subcontract until the insurance required of the Subcontractor has been so obtained and accepted.
>
> > a. Builder's Risk Insurance (Fire and Extended Coverage): The Contractor shall have adequate fire and standard extended coverage, with a company or companies acceptable to the Owner, in force on the project. The provisions with respect to Builder's Risk Insurance shall in no way relieve the Contractor of its obligation of completing the work covered by the Contract.

Id. at 118. Finally, as a general matter, the Contract indicates that it "is to be governed by the law of the state in which the Project is located," which is South Carolina. Id. at 116.

Mears filed the instant suit on September 8, 2017 alleging KIU breached the Contract by failing to obtain builder's risk insurance and seeking a declaratory judgment that KIU failed to comply with its insurance obligations. Mears subsequently filed its motion for partial summary judgment on its claims for declaratory judgment and breach of contract on August 3, 2018. ECF No. 18. KIU responded to the motion on August 31, 2018, ECF No. 21, to which Mears replied on September 14, 2018, ECF No. 26. KIU separately filed a cross-motion for summary judgment on September 10, 2018. ECF No. 25. Mears responded to KIU's cross-motion on September 24, 2018, ECF No. 33, and KIU replied on October 4, 2018, ECF No. 36. The court held a hearing on the summary judgment motions on January 16, 2019.

The court denied KIU's cross-motion for summary judgment and granted in part and denied in part Mears's motion for summary judgment. The Order denied Mears's motion as to the breach of contract claim but granted the motion as to the declaratory judgment claim, holding that the Contract unambiguously required KIU to obtain primary builder's risk insurance. As a result, KIU filed a motion for reconsideration of the Order, ECF No. 50, and a motion for certificate of appealability of the Order, ECF No. 51, on March 18, 2019. Mears responded to both on April 1, 2019. ECF Nos. 52–53. KIU did not file a reply in support of either motion. Therefore, the motions are ripe for review.

## II. STANDARDS

### A. Motion to Reconsider

Rule 54(b) states, in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

A motion brought under Rule 54(b) is judged by similar standards as a motion brought under Rule 59(e), which may only be granted for the following reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Grayson Consulting, Inc. v. Cathcart, 2014 WL 587756, at *1 (D.S.C. Feb. 14, 2014) (quoting Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)); Slep-Tone Entm't Corp. v. Garner, 2011 WL 6370364, at *1 (W.D.N.C. Dec. 20, 2011). The Fourth Circuit has "noted on more than one occasion, 'a prior decision does not qualify for the third exception by being just maybe or probably wrong; it must strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be

4

dead wrong.'" U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC, 899 F.3d 236, 258 (4th Cir. 2018) (quoting TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009)).

### B. Certification of Interlocutory Appeal

"[28 U.S.C. § ]1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." Lynn v. Monarch Recovery Mgmt., Inc., 953 F. Supp. 2d 612, 623 (D. Md. 2013) (quoting In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1982)). Pursuant to 28 U.S.C. § 1292(b), an interlocutory appeal may be sought for an order that is not otherwise appealable when the district court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." As such, a district court may certify an order for interlocutory appeal when: "1) such order involves a controlling question of law, 2) as to which there is substantial ground for difference of opinion, and 3) an immediate appeal from that order may materially advance the ultimate termination of the litigation." Mun. Ass'n of S.C. v. Serv. Ins. Co., Inc., 2011 WL 13253448, at *3 (D.S.C. Sept. 21, 2011) (internal quotations omitted). All three requirements must be met. Id.

In addition, Rule 54(b) of the Federal Rules of Civil Procedure permits a district court to "direct entry of a final judgment as to one or more, but fewer that all, claims" when an action involves multiple claims as long as "the court expressly determines that there is no just reason for delay." "The burden is on the party endeavoring to obtain Rule

54(b) certification to demonstrate that the case warrants certification." Braswell Shipyards, Inc. v. Beazer E., Inc., 2 F.3d 1331, 1335 (4th Cir. 1993).

### III.  DISCUSSION

**A.  Motion to Reconsider**

KIU argues that the court should reconsider the Order because (1) new evidence reveals that Mears concedes that the Contract is ambiguous; (2) the Order misapplied the law related to ambiguous contracts; and (3) the Order results in manifest injustice to KIU. KIU also argues that the court misstated a fact regarding Westport's insurance coverage determination. The court addresses each in turn and finds that none of KIU's arguments warrant the court's reconsideration of the Order.

**a.  New Evidence**

KIU first argues that the Order should be reconsidered in light of new evidence that was unavailable prior to the summary judgment briefings and hearing. The new evidence is deposition testimony from John Best ("Best"), the Mears attorney who negotiated the Contract on behalf of Mears, and Steven Coombs ("Coombs"), Mears's insurance expert. The depositions were taken on February 15, 2019 and February 14, 2019, respectively, which was approximately one month after the hearing on the motions for summary judgment. KIU argues that this deposition testimony indicates that Best and Coombs believe that the Contract is ambiguous, and because Mears's own witnesses conceded that the Contract is ambiguous, the court should reconsider the Order and also find the Contract to be ambiguous.

In opposition, Mears argues that the court should not consider extrinsic evidence because the court determined that the Contract unambiguously requires KIU to obtain

primary builder's risk insurance.  The court agrees.  As explained in the Order, when a

court interprets a contract, it first looks within the four corners of the contract.  ECF No.

49 at 13 (citing Silver v. Aabstract Pools & Spas, Inc., 658 S.E.2d 539, 542 (S.C. Ct.

App. 2008)).  If, in doing so, the court determines that the contract is unambiguous, then

the court's inquiry ends there, and the court does not consider extrinsic evidence.  Id. at

17 (citing Silver, 658 S.E.2d at 542).  Here, the court interpreted the language of the

Contract and determined that, within the four corners of the Contract, the Contract

unambiguously required KIU to obtain primary builder's risk insurance.  Therefore, the

court need not and cannot consider extrinsic evidence of Best's and Coombs's deposition

testimony.[1]

### b. Law on Ambiguous Contracts

Next, KIU argues that the court misapplied the law related to ambiguous

contracts.  KIU contends that the Order correctly stated that contracts "will be interpreted

so as to give effect to all of their provisions, if practical."  ECF No. 49 at 12 (emphasis

added by KIU) (citing Reyhani v. Stone Creek Cove Condominium II Horizontal

Property Regime, 494 S.E.2d 465, 468 (S.C. Ct. App. 1997)).  KIU argues that the court

clearly erred in its application of this law because it is not practical for both KIU and

---

[1] In addition, the court strongly discourages motions to reconsider based on new evidence that arises from discovery conducted after the filing of a motion for summary judgment.  This practice hinders the finality of rulings on summary judgment and creates the potential for relitigating issues already decided by the court based on the record before the court at the time of the motion.  While the court acknowledges that Mears was the party who first filed the motion for summary judgment prior to the close of discovery, necessitating KIU's response, KIU also filed a cross-motion for summary judgment before discovery ended.  If a party chooses to file a motion for summary judgment prior to the close of discovery, it must accept the risk that new and potentially useful evidence could arise after the motion has been filed, and that it forfeited its ability to use that information in its motion.

Mears to be required to obtain builder's risk insurance. KIU claims that having two builder's risk policies covering the same project is "contrary to both common sense and industry practice." ECF No. 50-1 at 8.

In reading and interpreting the language of the Contract, the court determined that the General Conditions and SC-7 were to be read together to require KIU to obtain primary builder's risk insurance and to require Mears to obtain builder's risk insurance for fire and extended coverage. "A clear and explicit contract must be construed according to the terms the parties have used, with the terms to be taken and understood in their plain, ordinary, and popular sense." Gilbert v. Miller, 586 S.E.2d 861, 864 (S.C. Ct. App. 2003). "Language which is perfectly clear determines the full force and effect of the document." Gilstrap v. Culpepper, 320 S.E.2d 445, 447 (S.C. 1984). The language of the Contract clearly requires KIU to obtain "primary" builder's risk insurance in Articles 5.06 and 5.07, ECF No. 18-1 at 73–74, and requires Mears to obtain builder's risk insurance that just provides "adequate fire and standard extended coverage" in SC-7, id. at 118. Again, the court's job is to read the language within the four corners of the Contract and determine whether the Contract can be interpreted to give effect to both the General Conditions and SC-7, and the court determined that it could be. As the Order explained, the court is obligated to enforce the terms of the Contract "regardless of [the Contract's] wisdom or folly, apparent unreasonableness, of the parties' failure to guard their rights carefully." ECF No. 49 at 13 (citing S.C. Dep't of Transp. v. M & T Enterprises of Mt. Pleasant, LLC, 667 S.E.2d 7, 13 (S.C. Ct. App. 2008)). Whether it is

unwise or apparently unreasonable to require both parties to obtain some form of builder's risk insurance does not factor into the court's consideration.

Moreover, KIU already raised the argument that requiring both primary and secondary insurance is illogical in its reply in support of its cross-motion for summary judgment, see ECF No. 36 at 1–2, and the court rejected it, ECF No. 49 at 17. "[A] motion to reconsider an interlocutory order should not be used to rehash arguments the court has already considered merely because the movant is displeased with the outcome." South Carolina v. United States, 232 F. Supp. 3d 785, 793 (D.S.C. 2017). Indeed, KIU is asking the court "to rethink what the [c]ourt had already thought through—rightly or wrongly." Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983). The court declines to do so.

### c. Manifest Injustice

KIU argues that the Order results in manifest injustice to KIU because KIU may have to personally bear the cost of Mears redoing its work, which Mears estimates to be about $7 million. KIU contends that this is particularly unjust because Mears appears to have obtained a builder's risk policy that would allegedly cover the work but has refused to tender a claim. KIU then asks the court to amend the Order to require Mears to submit the claim to Mears's own insurance carrier because that was a term of the Contract. In response, Mears argues that the Order determined that KIU breached the Contract by failing to provide primary builder's risk insurance, and that requiring KIU to pay the cost is a remedy for breach of contract, not manifest injustice. Moreover, Mears argues that KIU's request for the court ordering Mears to submit the claim to its own insurance carrier is a request for an injunction, and that KIU has not filed a motion for an injunction

nor has it established the elements of an injunction. Moreover, Mears argues that the Contract does not require Mears to submit the claim to its insurance carrier.

KIU is correct that it could be liable for the $7 million. However, KIU does not explain how the Order results in manifest injustice other than the fact that the Order's finding may result in KIU being required to pay $7 million. This is simply the remedy here and an outcome that has been within the realm of possibility from the outset of the case. The case is a dispute over who must pay for the $7 million of work, and as such, someone will be required to pay that amount.

Moreover, KIU's request for the court to order Mears to tender the claim to Mears's insurance provider is a request for injunctive relief. KIU has not filed a motion for an injunction nor has it cited to any law in support of its request; therefore, the court cannot grant KIU's request.

### d. Misstatement of Fact

Finally, KIU argues that the Order misstated a fact regarding Westport's insurance coverage determination. The Order stated that Westport denied the claim in part because the Contract required Mears to obtain builder's risk insurance, and Westport determined that KIU's policy was excess to any of Mears's policies. KIU argues that this statement is incorrect. KIU explains that this reasoning was an initial determination made in Engle Martin & Associates's ("Engle Martin")[2] September 30, 2016 letter when Westport had not yet made any coverage determination, and that the official determination of coverage is found in Engle Martin's May 18, 2018 letter that denied

---

[2] Engle Martin is an independent adjustment firm that Westport retained as its claim adjuster.

coverage solely due to Mears's faulty workmanship and errors or omissions. However, in KIU's response to Mears's motion for summary judgment, KIU stated that "KIU's insurer [Westport] denied the claim, because, 1) <u>per the contract between KIU and Mears, Mears was the party responsible for obtaining builder's risk insurance for the Project</u>, and 2) the cause of the broken pipeline was Mears's faulty workmanship, which is excluded from coverage." ECF No. 21 at 2 (emphasis added). The Order stated these two reasons, almost word-for-word. ECF No. 49 at 2. Therefore, KIU is faulting the court for relying on KIU's own statement that it made in its response to Mears's motion for summary judgment.

To be sure, the September 30, 2016 letter does explain that Westport had not yet made a coverage determination. ECF No. 18-1 at 304. However, Engle Martin's May 18, 2018 letter explains that "Westport incorporates herein all prior reservations of rights, including but not limited to those referenced in our letters dated September 30, 2016 and July 3, 2017." ECF No. 21-7 at 5. Therefore, the final coverage determination in the May 18, 2018 letter incorporates the September 30, 2016 letter, which discusses the determination that Mears was the party responsible for obtaining primary builder's risk insurance. Therefore, it was not a misstatement for the court to state that "Westport determined that KIU's policy was 'excess to' any of Mears's insurance policies, meaning

KIU's policy would not pay until Mears's insurance policies limits are exhausted," ECF No. 49 at 2, which was information found in the September 30, 2016 letter.

In conclusion, none of KIU's arguments convince the court that it should reconsider the Order. Therefore, the court denies KIU's motion to reconsider.

### B. Petition for Certificate of Appealability

KIU also asks the court to certify an interlocutory appeal of the Order pursuant to 28 U.S.C. § 1292(b) and Rule 54(b) of the Federal Rules of Civil Procedure. In doing so, KIU requests that the court effectuate the appeal by amending the Order to include the necessary findings and to stay the case pending the Fourth Circuit's disposition of the appeal. The court declines to certify an interlocutory appeal under 28 U.S.C. § 1292(b) and under Rule 54(b).

#### a. 28 U.S.C. § 1292(b)

KIU first argues that the court should certify an interlocutory appeal of the Order because the Order involves a controlling question of law on which a substantial ground for difference of opinion exists. KIU then argues that an immediate appeal of the Order will materially advance the ultimate termination of the litigation. Mears disagrees, arguing that the Order does not involve a controlling question of law and that KIU's disagreement with the Order is not a substantial ground for difference of opinion.

"A controlling question of law is a narrow question of pure law whose resolution would be completely dispositive of the litigation, either as a legal or practical matter." In re TD Bank, N.A. Debit Card Overdraft Fee Litig., 2016 WL 7320864, at *5 (D.S.C. July 18, 2016) (quoting Michelin N. Am., Inc. v. Inter City Tire & Auto Ctr., Inc., 2013 WL 5946109, at *3 (D.S.C. Nov. 6, 2013)). However, "[e]ven where the question presented

is a legal one, if resolution of that issue is rooted in the facts of a particular case, the question is not proper for interlocutory review." Randolph v. ADT Sec. Servs., Inc., 2012 WL 273722, at *5 (D. Md. Jan. 30, 2012). "As a result, § 1292(b) is not 'appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts.'" Michelin N. Am., Inc., 2013 WL 5946109, at *3 (quoting City of Charleston, S.C. v. Hotels.com, LP, 586 F.Supp.2d 538, 548 (D.S.C. 2008)).

Here, KIU argues that the "controlling question of law" in the Order is the determination of whether the Contract is ambiguous. While determining whether a contract is ambiguous is a legal issue, the resolution of the issue here is rooted in that facts of this case. Indeed, KIU is not arguing that there is some controlling question of law with regard to the law on ambiguous contracts. Instead, it is contesting the court's application of the law to the facts of this case. This is clearly not a "controlling question of law." Because the determination of whether the Contract is ambiguous is not a "controlling question of law," the court denies KIU's petition for certificate of appealability pursuant to § 1292(b).

**b. Fed. R. Civ. P. 54(b)**

KIU also seeks a certificate of appealability through Rule 54 of the Federal Rules of Civil Procedure. KIU contends that because the court has fully adjudicated Mears's declaratory judgment claim, the claim is ripe for appellate review. Under Fed. R. Civ. P. 54(b), the court engages in a two-step inquiry to determine whether an individual claim may be appealed prior to the court's adjudication of all claims. First, the court must "determine that it is dealing with a 'final judgment.'" Curtiss-Wright Corp. v. Gen. Elec.

Co., 446 U.S. 1, 7, (1980). "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" Id. (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437 (1956)). If the court is dealing with a final judgment, then it must determine whether there is any just reason for delaying the appeal until all claims are fully adjudicated. Id. at 8. As the Supreme Court explained, "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." Id.

Under Rule 54(b), the court's role is "to act as a 'dispatcher.'" Curtiss-Wright Corp., 446 U.S. at 8. "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised 'in the interest of sound judicial administration.'" Id. Nevertheless, both the Supreme Court and the Fourth Circuit have recognized that Rule 54(b) certification is an exceptional procedure and should not be granted routinely. Id. at 10; Braswell Shipyards, Inc., 2 F.3d at 1335.

As to the first step in a 54(b) inquiry, rulings on declaratory judgments are generally considered a "final judgment." For example, in Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, the court certified its declaratory judgment ruling as final pursuant to Rule 54(b) despite other pending claims. 225 F.R.D. 171, 173 (D. Md. 2004). The plaintiff alleged that the defendants violated the Securities Exchange Act of 1934, and the defendants filed counterclaims seeking declaratory relief under several claims, some of which related to whether the plaintiffs' adoption of a

poison pill during a partial acquisition was illegal. The court determined that the poison pill was not illegal, and the defendants sought the court's declaration that this judgment was final. The court found that its declaratory judgment was final because it was "an ultimate disposition" of the poison pill claims. Id. at 174. The court reasoned that the declaratory judgment claims "sought no other relief than a declaration that the poison pill was illegal;" therefore, the court's declaration that the poison pill was not illegal "finished the litigation on the merits" of those claims. Id.

The procedural posture of Mears's claims is similar to the claims in Neuberger. In Mears's declaratory judgment claim, Mears sought "a declaration that KIU failed to comply with its insurance obligations and the damages which resulted from such failure to comply."[3] Compl. ¶ 45. In the Order, the court granted summary judgment on Mears's declaratory judgment claim, finding that the Contract required KIU to obtain primary builder's risk insurance and failed to do so. This is all that the declaratory judgment claim sought; therefore, the court's declaration was the "ultimate disposition" of the declaratory judgment claim, meaning the claim is a final judgment.

Mears argues that there is no final judgment here because the court has only adjudicated liability and not damages. Mears contends that "KIU seeks to appeal the Court's finding that KIU breached the Contract" and "[a]s specifically recognized in the Court's Order, whether such breach was a cause of damages and the amount of damages still need to be determined." ECF No. 52 at 7. While it is true that the court did not

---

[3] Counsel for Mears has clarified that Mears is not seeking a declaration of damages which results from KIU's failure to comply with the contract. Therefore, the court interprets Mears's declaratory judgment claim to solely seek a declaration that KIU failed to comply with its insurance obligations under the Contract.

consider damages in the Order, Mears's argument relates to the breach-of-contract claim, which is not the claim on which KIU seeks appellate review. Instead, KIU seeks an appeal of the declaratory judgment claim, which does not seek a declaration regarding damages and which the court fully and finally decided.

Having determined that the court's grant of summary judgment on the declaratory judgment constitutes a "final judgment," the court must next determine whether there is any just reason for delay in certifying appeal of the Order. To determine whether there is any just reason for delay, the court should consider:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Braswell Shipyards, Inc., 2 F.3d at 1335–36.

KIU argues that if it cannot appeal the declaratory judgment claim now, it will be forced to do so after the conclusion of the jury trial, and if the Fourth Circuit finds error in the Order, then the parties will have to relitigate the entire case because the question of whether the Contract is ambiguous is central to the case. As an initial matter, "[t]he burden is on the party endeavoring to obtain Rule 54(b) certification to demonstrate that the case warrants certification." Braswell Shipyards, Inc., 2 F.3d at 1335. Here, the burden is on KIU to show that there is no just reason for delaying the appeal of the Order; however, KIU does not even discuss the factors listed above. Instead, KIU simply argues that certification is warranted because delaying the appeal could delay the final resolution of this case. However, all appeals necessarily delay the final resolution of cases, and this

16

argument does nothing to persuade the court as to why it should take the exceptional procedure of certifying an appeal.

Even considering the factors enumerated by the Fourth Circuit, the court is still unconvinced that certification of an appeal is appropriate here. First, the relationship between the adjudicated claim, the declaratory judgment, and the unadjudicated claim, the breach-of-contract claim, is a close relationship. Indeed, by finding that KIU was required by the Contract to obtain primary builder's risk insurance, part of the breach-of-contract claim is resolved because KIU's failure to obtain primary builder's risk insurance, as required by the Contract, is a breach of contract. As the court explained in the Order, the remaining issue is whether Mears was damaged by KIU's failure to obtain primary builder's risk insurance. Therefore, the claims are not distinct and separate claims but are in fact quite intertwined, weighing against certification of an appeal of the declaratory judgment claim. The court notes that Mears has also brought a new claim in its supplemental complaint that is unrelated to the substance of the declaratory judgment or breach of contract claim. However, this additional claim does not alter the close relationship between the declaratory judgment and breach of contract claims.

As to the next factor, there is a possibility that future proceedings before this court could moot the ambiguity issue. If a jury found that Mears was not damaged by KIU's failure to obtain primary builder's risk insurance and therefore could not prove its breach-of-contract claim, then the issue of whether the Contract is ambiguous would be mooted

because Mears would not recover anything from KIU. This also weighs against certification of an appeal.

If the ambiguity issue were to be appealed now, it would be unlikely that the Fourth Circuit would have to consider the Contract's ambiguity a second time. If the Fourth Circuit affirms the Order and agrees that the Contract is unambiguous, future trial proceedings would solely be related to damages, and any appeal from those proceedings would only relate to damages. If the Fourth Circuit held that the Contract was ambiguous, future trial proceedings would be related to both the parties' intent as to the meaning of the Contract as well as damages. Any findings at the trial level about the parties' intent does not require another determination about whether the Contract is ambiguous. However, if the Fourth Circuit considered the appeal of the declaratory judgment claim now and then considered another appeal of damages after the conclusion of trial, it would be forced to reconsider the same facts related to the same dispute between the same parties. This tends to weigh against certifying an interlocutory appeal.

There are no claims or counterclaims that could "set off" the judgment on the declaratory judgment, because no damages were awarded through the resolution of this claim. As for miscellaneous factors, which is really the only thing that KIU discusses in arguing for certification, it may be more expedient to permit the appeal of the Order now. If the court denies certification, the case will go forward to trial, where the only issue will be damages and Mears's claim in its supplemental complaint. KIU would then appeal the court's finding that the Contract is unambiguous, and if the Fourth Circuit reversed and remanded the case, then the parties would have to retry the case with the added issue of the parties' intent behind the ambiguous Contract. The trial would be substantially

18

different from a trial purely based on damages and Mears's supplemental complaint claim. However, the court also recognizes the importance of "prevent[ing] piecemeal appeals in cases which should be reviewed only as single units." Curtiss-Wright Corp., 446 U.S. at 10. Here, it would be hard to view Mears's declaratory judgment and breach-of-contract claim as anything but a single unit given how interrelated they are. Moreover, "the fact the parties on appeal remain contestants below militates against the use of Rule 54(b)," Braswell, 2 F.3d at 1336, and here, the parties in the declaratory judgment claim and breach-of-contract claim are the same.

Based on KIU's arguments and the court's own weighing of the factors articulated in Braswell Shipyards, Inc., the court finds that there are convincing and just reasons for delaying the appeal of the final judgment on Mears's declaratory judgment claim. Certifying an interlocutory appeal is an exceptional procedure, and the court finds that it is not warranted here. Therefore, the court denies KIU's motion for certificate of appealability.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** the motion to reconsider and **DENIES** the motion for certificate of appealability.

**AND IT IS SO ORDERED.**

_/s/ David C. Norton_

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**May 30, 2019
Charleston, South Carolina**