IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MEARS GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-2418-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| KIAWAH ISLAND UTILITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The following matter is before the court on various motions in limine. For the reasons set forth below, the court denies KIU's motion to exclude Jeff Puckett, grants Mears's motion in limine, denies Mears's motion in limine regarding subsequent remedial measures, grants in part and denies in part KIU's motion in limine, denies KIU's motion in limine to allow contextual evidence regarding the breach, and denies KIU's motion to proffer certain evidence.

## I.  BACKGROUND

The facts of this case can be found in the court's prior order, ECF No. 155. The case is set for trial beginning on Monday, February 10, 2020. Currently pending before the court are six motions in limine. ECF Nos. 122, 124, 126–29. All six motions are ripe for review, and the court held a hearing on the motions on January 28, 2020.

## II.  DISCUSSION

The court takes each motion in limine in turn.

**A.  KIU's Motion to Exclude Jeff Puckett**

First, KIU seeks to exclude testimony from Jeff Puckett ("Puckett"). Puckett is the president and one of the owners of J.D. Hair & Associates, and he was hired by a

1

company called DeSimone to be a horizontal directional drilling specialist. When Westport was conducting its coverage investigation, Westport's adjustor Engle Martin hired DeSimone, who hired Puckett to investigate Mears's workmanship. Mears designated Puckett as a non-retained expert. Puckett was deposed, and Mears plans to present Puckett's deposition testimony at trial.

KIU argues that Puckett's connection to Westport mandates Puckett's exclusion. KIU explains that Mears has argued, and the court has explicitly held, that Wesport's denial of coverage is not at issue in this case. Now Mears seeks to introduce Puckett's testimony about his evaluation of Mears's work. KIU argues that in order to do so, Mears would have to give some context of who Puckett is and the nature of his investigation, which would reveal that his investigation was connected to an insurance claim. KIU also notes that Mears's expert will testify as to the same conclusions that Puckett would present, meaning that Mears seeks to bolster its expert's testimony with Puckett's testimony and that Puckett's testimony is needlessly cumulative. KIU then generally argues that this testimony will prejudice KIU. Finally, KIU asks that if Puckett is allowed to testify, then KIU should be permitted to introduce testimony about Westport and its coverage denial; otherwise KIU will be prejudiced.

In response, Mears argues that the probative value of Puckett's testimony is not substantially outweighed by any prejudice to KIU. Mears explains that Puckett will testify that Mears has a good reputation in the industry; Mears had the right people and equipment to do the job; except for exceeding the allowable safe load on the pipe, Mears complied with the contract specifications; Mears's best option was to continue to pull the pipe even though the safe allowable load was exceeded; and Puckett would have done the

2

same thing. Mears argues that this testimony is highly probative to KIU's faulty workmanship defense and can be admitted without any reference to Westport. Mears explains that the jury would just hear that Puckett was hired by DeSimone to be a horizontal directional drilling specialist in connection with a matter they were considering involving a job crossing under the Kiawah River. Mears also notes that both parties' experts rely on Puckett's graphical summary of EDR data in their reports. Mears argues that Puckett's testimony should not be excluded on the basis that it's needlessly cumulative. Finally, Mears contends that KIU has not sufficiently identified how it would be prejudiced by the introduction of Puckett's testimony.

KIU subsequently explains that the prejudice arises from the fact that Mears would be permitted to present the aspects of Puckett's testimony that are favorable to Mears while leaving the jury wondering who hired Puckett and how he became involved in the case. With regard to the other experts' reliance on Puckett's graph, KIU explains that those experts can independently testify about the underlying data and can prepare their own graphs if such reliance is truly an issue.

Pursuant to Rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The court agrees that as a general matter, KIU would not be unfairly prejudiced by Puckett's testimony. Puckett's testimony relates to Mears's workmanship, and KIU can cross examine Puckett on these issues in the same manner that KIU plans to do with Mears's other expert.

3

KIU also argues that Puckett's testimony would confuse the issues, mislead the jury, and needlessly present cumulative evidence. The court is not convinced that Puckett's testimony would confuse the issues or mislead the jury. As Mears explained, it can be explained to the jury that Puckett was hired by DeSimone to be a horizontal directional drilling specialist in connection with a matter they were considering involving a job crossing under the Kiawah River. The jury does not need to know anything more than that, and this explanation does not leave any glaring questions about Puckett's role.

As to needlessly presenting cumulative evidence, courts do permit multiple experts to testify as to the same conclusions when the issue is central to the case. See, e.g., Wickersham v. Ford Motor Co., 2016 WL 5349093, at *10 (D.S.C. Sept. 26, 2016) (finding that two experts' conclusions on causation were not needlessly cumulative because causation was "highly contested and [a] critical component of [the] case" and that "fact alone [was] sufficient to dispose of [the] 403 argument."). This can be the case when the witnesses have different backgrounds and experience. Treadway v. Danieli & C. Officine Meccaniche SpA, 2008 WL 5504710, at *1 (W.D. Va. Aug. 15, 2008) ("Although their ultimate opinions may be the same, because each witness has a different background and experience, it cannot be determined at this point that their testimony is so cumulative that it should be excluded."). However, there can still be a valid concern for cumulative testimony when experts have the same or similar testimony. Hulsey v. HomeTeam Pest Def. LLC, 2012 WL 2366385, at *3 (D.S.C. June 21, 2012) (declining to prevent the testimony of one defense expert in favor of the other defense expert because the testimony was about highly contentious issues but noting that if the evidence is cumulative, the opposing party can object at trial).

The Fourth Circuit recently considered this issue in United States v. Galecki and found that the district court erred in excluding an expert based on cumulative testimony. 932 F.3d 176, 186 (4th Cir. 2019). The district court excluded an expert witness because there were two other expert witnesses who planned to testify as to the same conclusion. United States v. Ritchie, 2018 WL 4693811, at *3 (E.D. Va. Sept. 28, 2018), rev'd and remanded sub nom. United States v. Galecki, 932 F.3d 176 (4th Cir. 2019). The Fourth Circuit held that despite the similarity in the experts' testimony, the testimony was not cumulative because the excluded expert was not paid by the defendant to testify, meaning that the opposing party could not impeach the expert on having a pecuniary motive for testifying. In contrast, the defendant paid its other two expert witnesses. The Fourth Circuit concluded that the excluded expert's "inability to be impeached on that [pecuniary motive] ground made his testimony unique and particularly relevant, not cumulative." Galecki, 932 F.3d at 186–87.

Galecki convinces the court that Puckett's testimony would not be cumulative. Puckett was not retained by Mears, so KIU could not impeach Puckett on his pecuniary motive. Based on Galecki, that fact is sufficient to conclude that Puckett's testimony is not cumulative, regardless of whether his opinions match the opinions of Mears's retained expert. Thus, the court denies KIU's motion to exclude the testimony of Puckett, and the court finds it unnecessary to allow evidence regarding Westport to provide the additional context to Puckett's testimony.[1]

---

[1] The court also notes that KIU argued at the hearing on the motions that Puckett should be excluded because he was not disclosed in a timely manner. However, KIU did not make this argument in its motion or reply to the motion. See ECF Nos. 122, 139. KIU did state, in a footnote to a sentence arguing that Puckett's testimony would be cumulative, that "Mears designated Mr. Puckett as a non-retained expert witness in a

### B. Mears's Motion in Limine

Next up, Mears filed an omnibus motion in limine containing 18 requests. The court only addresses the requests that are opposed by KIU.

#### a. Mention or Reference to Westport Insurance Policy (#1)

Mears first seeks to exclude any mention or reference to the Westport insurance policy. Mears argue that such mention would be confusing, irrelevant, and prejudicial to Mears. In response, KIU explains that if the court grants KIU's motion to exclude Puckett, then this request is unopposed. If the court denies KIU's Puckett motion, then KIU asks to present evidence about the Westport policy to avoid prejudice and to avoid misleading the jury. As discussed above, the court finds that Puckett's testimony would not be prejudicial or misleading absent greater context about Westport. Moreover, as the court has made clear, the Westport policy is not at issue in this trial and not relevant. Therefore, the court grants this request.

#### b. Mention or Reference to Westport's Denial of Coverage (#2)

Next, Mears seeks to exclude any mention or reference to Westport's coverage denial, which the court has already found to be irrelevant to this matter. KIU's response

---

Supplemental Identification of Expert Witness dated April 19, 2019 (ECF No. 55), nine months past the July 19, 2018 deadline for Mears to identify expert witnesses." ECF No. 139 at 3 n.1. However, KIU does not argue that Puckett should be excluded for that reason, and the court would be strained to interpret this footnote that simply states a fact as making that argument.

In Mears's motion in limine, Mears's request # 18 was to exclude any mention or reference to expert testimony that was not timely disclosed. ECF No. 124 at 4. KIU responded as follows: "KIU does not oppose Request No. 18 for purposes of this trial. KIU notes that Jeff Puckett, who Mears seeks to call to provide expert testimony, was not timely disclosed per the Court's scheduling order." ECF No. 142 at 5. The court does not interpret KIU's "note" to be an argument that Puckett should be prevented from testifying at trial due to the timing of his disclosure. Therefore, the court declines to address this argument.

to this request is the same as its response to Mears's first request. For the same reasons described above, the court grants this request.

### c. Mention or Reference to the Negotiation of the Contract (#4)

Mears asks the court to exclude any reference to the negotiation of the Contract and anything KIU claims that it relied upon entering the Contract. Mears argues that this information is irrelevant since the court has already determined that the Contract unambiguously required KIU to obtain primary builder's risk insurance.

In response, KIU presents three arguments. First, KIU contends that evidence of the parties' negotiations is relevant to KIU's claim that Mears waived its right to enforce the Contract. KIU plans to argue that Mears's failure to demand a certification of KIU's builder's risk insurance constitutes a waiver of any right to enforce the Contract. KIU also argues that this evidence is relevant to explain why KIU did not interpret the Contract to have a requirement for an ensuing loss exception in a builder's risk policy. Finally, KIU incorporates the arguments it makes in its motion to allow contextual evidence regarding the breach, which is discussed below.

Beginning with the waiver argument, KIU explains that "[t]he evidence shows that Mears manifested an intent to waive any requirement in the Contract that KIU provide the builder's risk insurance." ECF No. 142 at 2. KIU states that after the Contract was executed, Mears provided KIU a certificate of insurance evidencing Mears's insurance coverage, but KIU never provided a certificate of insurance to Mears, and Mears never asked for one. KIU argues that "Mears' failure to demand a certificate or other evidence of KIU's builder's risk coverage is a waiver of any right to enforce

7

what the Court has determined was a breach of contract by KIU for not purchasing the insurance." Id.

During summary judgment, KIU made this argument based on the language of the Contract. Article 5.03(C) of the Contract states that "Failure of Owner [KIU] to demand such certificates . . . shall not be construed as a waiver of Contractor's [Mears's] obligation to maintain such insurance." There is no corresponding clause for Mears's failure to demand certificates of insurance; therefore, KIU argued that Mears waived any claim related to KIU's coverage. In the court's summary judgment order, the court explained:

> KUI's argument asks the court to infer Mears's waiver based on the absence of contractual language. In essence, KIU argues that because there is no clause stating that Mears's failure to demand KIU's insurance certificates shall not be construed as a waiver, then Mears's failure to demand KIU's certificates must be construed as a waiver. The language of the Contract simply does not support this conclusion. As such, the court denies summary judgment as to this issue.

ECF No. 49 at 18–19. KIU argues that its waiver defense has not been foreclosed. KIU claims that the court "declined to accept KIU's waiver argument based on the interpretation of that specific language of the Contract" but that "[t]he court's ruling does not preclude KIU from presenting its waiver argument altogether; it simply found that the contract language was not strong enough to support summary judgment on that point." ECF No. 150 at 5.

"A waiver is an intentional relinquishment of a known right." Lyles v. BMI, Inc., 355 S.E.2d 282, 285 (S.C. Ct. App. 1987). "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." Id. "Waiver, like estoppel, is an affirmative defense and the burden of proof is upon the party who asserts it." Provident

Life & Acc. Ins. Co. v. Driver, 451 S.E.2d 924, 928–29 (S.C. Ct. App. 1994). As such, even if a defendant is found to have breached a contract, the defendant may nevertheless be not liable for that breach if the plaintiff waived his right to enforce the contract. "Waiver is a question of fact for the finder of fact." Parker v. Parker, 443 S.E.2d 388, 391 (S.C. 1994). Because waiver is an affirmative defense, and because the court has only rejected KIU's contractual waiver argument, the court finds that KIU may argue at trial that Mears waived its right to enforce the Contract based on its actions after the breach of the Contract. According to the court's understanding, KIU will argue that because Mears failed to confirm that KIU obtained primary builder's risk insurance, Mears waived its right to bring a breach of contract claim based on KIU's failure to obtain such insurance. The court doubts the strength of this argument, as KIU will be asking the jury to find that Mears waived its right based on Mears's failure to do something that the Contract does not require it to do, but KIU is free to make the argument to the jury.

However, KIU may not use evidence of contract negotiations in its argument. KIU wants to introduce various statements made by Mears during the negotiation of the Contract to bolster its waiver argument. KIU explains that one Mears employee stated "We [Mears] are providing Builder's Risk Insurance. Doesn't that address your concern?" and another Mears employee allegedly said similar things on a phone call with a KIU employee. However, the issue with using this evidence to argue waiver is that it is evidence that occurred <u>prior</u> to the existence of the Contract. Waiver occurs based on a party's actions <u>after</u> the breach of contract, and a contract cannot be breached until it exists. The South Carolina pattern jury instructions cited by KIU confirm this. Ralph

King Anderson, Jr., S.C. Requests to Charge – Civil § 19-22 (2016) ("The defendant claims that, even if there was a breach of contract, the plaintiff, <u>by his actions after the alleged breach</u>, waived his right to enforce the contract." (emphasis added)). Here, the parties' contract negotiations occurred before the Contract was formed, and KIU clearly could not breach the Contract until the Contract was actually formed. The only relevant actions by Mears occurred after the Contract was breached. Therefore, evidence of contract negotiations is not relevant to KIU's waiver argument.

As to KIU's other arguments, KIU does not need to explain that it did not interpret the Contract to have a requirement for an ensuing loss exception in a builder's risk policy. The only purpose of such an argument would be to relitigate the breach issue. As discussed below, KIU can argue that an ensuing loss exception is not specifically mentioned in the Contract, but any evidence about contract negotiations would be used to show that KIU did not breach the Contract by failing to obtain such an exclusion, which KIU cannot argue at this point. Finally, KIU incorporates the arguments it makes in its motion to allow contextual evidence regarding the breach, which is discussed below and which the court denies. Therefore, the court grants Mears's request to exclude evidence of contract negotiations.

### d. Mention or Reference Regarding Potential KIU Argument About Ensuing Loss (#5)

Next, Mears asks to exclude any mention or reference to KIU not breaching the Contract because the Contract does not require KIU to purchase builder's risk insurance that would cover any ensuing loss. KIU responds that the court has never held that the Contract required KIU to obtain builder's risk insurance that covered ensuing loss, meaning that KIU is free to argue that the Contract does not require an ensuing loss

10

exception. In reply, Mears explains that it does not oppose KIU arguing that an ensuing loss provision would not have been in a typical builder's risk policy or that it was not specifically referenced in the Contract, but Mears does oppose KIU rearguing the breach of contract finding.

The court instructs KIU to limit its questioning and arguments on this issue to the two manners Mears does not oppose. In other words, KIU can argue that an ensuing loss provision would not be in a typical builder's risk insurance policy, and KIU can argue that the Contract does not contain a requirement for such an exclusion. Going any further would permit KIU to relitigate the breach issue, which it clearly cannot do.

### e. Mention or Reference to Mears's Swiss Re Policy (#6)

Next, Mears seeks to exclude any reference to Mears's Swiss Re policy. In response, KIU argues that the fact that Mears failed to submit a claim to the Swiss Re policy is evidence that Mears failed to mitigate its damages. KIU also contends that the court ruled that Mears had an obligation to provide certain insurance—secondary builder's risk insurance—and that KIU plans to argue that Mears is obligated to present this claim to Swiss Re. KIU also claims that this is relevant to its waiver argument. In reply, Mears explains that it did not fail to mitigate damages by not presenting a claim to Swiss Re because filing a claim does not avoid damage or present loss; instead, it transfers the payor of the damages from one to another. Mears also argues that its insurance is a collateral source that is inadmissible.

The core of this dispute is that KIU thinks Mears is obligated to present a claim to Swiss Re. However, the problem is that KIU has never sought that relief in court. KIU has not, in this action, filed a declaratory judgment claim seeking a declaration that Swiss

Re provides coverage, nor has KIU sought any sort of injunctive relief that would order Mears to submit the claim. Moreover, as Mears argues, submitting a claim to Swiss Re is not mitigating damages. Mears's claimed damages for KIU's breach are $7 million. By submitting a claim to Swiss Re, that amount of damages is not reduced or mitigated. Instead, it would be transferring the obligation to pay for the damage from one party to another. KIU provides no authority that stands for the proposition that submitting a claim to an insurance company constitutes mitigation of damages in a breach of contract case. Finally, the court fails to see how this evidence would be relevant to KIU's waiver claim. Therefore, the court grants this request.

### f. Mention or Reference to Mears's Obligation to Submit Claim to Swiss Re (#10)

Mears asks the court to exclude any reference to Mears having an obligation to submit a claim to Swiss Re. KIU's response to this is the same as its response to the request above, and for the same reasons, the court grants Mears's request.

### g. Mention or Reference to Fact that Mears Did Not Call Witness (#11)

Mears seeks to exclude mention of the fact that Mears did not call a witness to testify in this case because the probative value is substantially outweighed by the prejudicial effect. KIU objects to this to the extent that Mears fails to call any of its own or current former employees to testify, citing the "missing witness" rule. As explained by the Supreme Court of South Carolina,

> [a]lthough it has been stated with some variations, it has long been the general rule in South Carolina that if a party fails, without satisfactory explanation, to produce the testimony of an available witness on a material issue in the case and the evidence is within his knowledge, is within his power to produce, is not equally accessible to his opponent, and is such as he would naturally produce if it were favorable to him, it may be inferred

12

> that such testimony, if presented, would be adverse to the party who fails to call the witness.

In re Gonzalez, 763 S.E.2d 210, 214 (S.C. 2014).  This rule only applies when the missing witness is "within some degree of control of said party" and when "under all the circumstances, the failure to produce such witness creates suspicion of a willful attempt to withhold competent evidence."  Id.  As an initial matter, this is a South Carolina evidentiary rule.  Federal courts abide by the Federal Rules of Evidence.  Even if it were procedurally proper to apply this rule, the court is unconvinced that it would apply here.  Mears's former employees are not within some degree of Mears's control, meaning the rule would be inapplicable to them.  As to Mears's current employees, KIU has given no suspicion of a willful attempt to withhold competent evidence.  Mears states that it has made all of the witnesses within its control available for depositions, and as Mears argues, KIU cannot comment on a witness's absence when KIU chose not to depose that witness.  Therefore, the court grants this request in limine, but to the extent this becomes an issue at trial, the parties may raise it then.

### h. Mention or Reference to Missing Testimony (#12)

Mears asks to exclude reference to what the testimony would have been of any witness not actually called to testify.  KIU objects to this to the extent that Mears fails to call any of its own or current former employees to testify.  For the reasons discussed above, the court grants this request in limine but will permit the parties to raise the issue at trial if need be.

### i. Mention or Reference to Probable Testimony of Absent Witnesses (#13)

Finally, Mears seeks to exclude reference to the probable testimony of a witness who is absent, unavailable, has been struck by the court, or not called to testify.  KIU

objects to this to the extent that Mears fails to call any of its own or current former employees to testify. For the reasons discussed above, the court grants this request in limine but will permit the parties to raise the issue at trial if need be.

### C. Mears's Motion in Limine Regarding Subsequent Remedial Measures

Mears's final motion in limine seeks to exclude any evidence of subsequent remedial measures. Mears argues that Mears made changes on its second drill to "maximize the potential for success," and the fact that it made those changes does not mean that the first drill was insufficient. ECF No. 126 at 1. Mears argues that it would be improper for KIU to argue that the first drill was wrong because the second drill was successful since Rule 407 of the Federal Rules of Evidence prohibits evidence of subsequent remedial measures to show negligence or culpable conduct.

In response, KIU makes several arguments. First, KIU explains that Mears is seeking damages that include the cost of the second drill, so KIU argues that Mears opened the door to evidence about the second drill. As such, KIU would not be able to fully examine a witness regarding Mears's claimed damages for the second drill without getting into the question of why those costs, and a second drill, were necessary. KIU also argues that the policy behind Rule 407 indicates that the rule is not meant to apply in a situation like this one. Finally, KIU argues that this evidence is admissible for impeachment purposes.

Beginning with KIU's first and last arguments, Mears confirms in its reply brief that it does not oppose the use of this evidence for purposes other than showing culpable conduct, such an impeachment or to prove the feasibility of precautionary measures. Indeed, Mears is not seeking to exclude all evidence of the second drill; just any

arguments that Mears is culpable because it made changes in the second drill, per the parameters of Rule 407. Therefore, the question that remains is whether this situation falls within the scope of Rule 407.

Rule 407 states:

When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

The difficulty in applying this rule to this case arises from the first clause, not the second. It's clear that KIU seeks to use evidence of the second drill to show that Mears was negligent or engaged in culpable conduct. The question is whether the second drill is a "measure[ ] [that was] taken that would have made an earlier injury or harm less likely to occur." In other words, was the second drill a remedial measure? The court finds that it is not. Black's Law Dictionary defines "remedial" as "[i]ntended to correct, remove, or lessen a wrong, fault, or defect." This is not a scenario in which Mears made a change to its first, dangerously drilled hole to make that hole safer. See TLT-Babcock, Inc. v. Emerson Elec. Co., 33 F.3d 397, 400 (4th Cir. 1994) ("Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them." (emphasis added)); Werner v. Upjohn Co., 628 F.2d 848, 855 (4th Cir. 1980) ("Rule 407 is designed to protect the important policy of encouraging defendants to repair and improve their products and premises without the fear that such actions will be used later against them in a lawsuit." (emphasis added)). This would be the typical scenario that Rule 407 contemplates.

Mears explains the changes as being made to "maximize the potential for success." ECF No. 126 at 1. That explanation does not suggest that the second drill was remedial. Mears was not correcting the first drill, removing the first drill, or lessening the fault of the first drill. Notably, Mears does not admit that its first drill was wrong, faulty, or defective. Mears claims that the borehole collapsed, meaning it was not Mears's fault that the first hole failed. Therefore, when Mears drilled the second drill, it was just re-doing its work. Those actions are not remedial; they were simply further actions by Mears to reach its end goal. As such, Rule 407 is inapplicable here, and the court denies Mears's motion.

**KIU's Motion in Limine**

Like Mears, KIU filed an omnibus motion in limine. Again, the court only discusses the requests that are opposed.

### a. Evidence Designed to Inflame (#2)

First, KIU asks the court to exclude the following:

- Any mention by Mears's counsel or any witness that KIU breached the Contract. KIU explains that the court will instruct the jury on the law and the fact that it found that KIU breached the Contract, and therefore no other mention of the breach is necessary. KIU argues that any further mention of the breach will prejudice KIU;

- Any mention that KIU "must" pay Mears damages or that the jury "must" award damages for the breach of Contract; and

- Any mention that KIU should be "held accountable" or "sent a message" for breaching the Contract.

Mears does not oppose the last two requests but does oppose the first.  Mears explains that the jury will know that KIU breached the Contract, and that prohibiting Mears from talking about that finding would inappropriately hamper Mears's ability to effectively present its case.  The court agrees with Mears.  As the court has said in a previous order, "[t]he problem with this argument is that the court has found that KIU is the wrongdoer because the court found that KIU has breached the contract.  That fact is not a prejudicial suggestion.  It is the posture of this case." ECF No. 136 at 4.  The court will certainly instruct the jury that the court found that KIU breached the Contract but that finding does not mean that Mears is entitled to damages.  But Mears cannot be prevented from discussing this basic fact of the case's current posture.  Therefore, the court denies KIU's first request but grants the second and third request.

### b.  Evidence or Exhibits Not Included on Mears's Exhibit List (#5)

KIU seeks to exclude any evidence, document, or exhibit that Mears has not already produced or named on its exhibit list.  Mears opposes this motion to the extent that KIU seeks to exclude exhibits to be used for rebuttal or impeachment that were not known to Mears at the time the exhibit lists were created.  The court will rule on this if and when this issue arises at trial.

### D.  KIU's Motion in Limine to Allow Contextual Evidence Regarding Breach

KIU seeks the opportunity to explain to the jury why the Contract was breached in order to lessen the prejudice that KIU claims will occur by the jury learning of the court's prior ruling.  KIU explains that it accepts for the purpose of trial that the court has ruled that KIU breached the Contract.  Now, KIU wants the opportunity to explain why the Contract was breached to lessen any prejudice that KIU may experience.  KIU is

concerned that the jury will be angry with KIU and seek to punish KIU with its verdict at trial. KIU also argues that this is relevant to its waiver argument.

The only explanation as to why KIU breached the Contract is that the court read the Contract, interpreted the Contract, and found that it unambiguously required KIU to obtain primary builder's risk insurance. KIU did not obtain such insurance nor did it argue that its existing insurance fulfilled the Contract requirements; therefore, the court found that KIU breached the Contract. No evidence is needed for that explanation. The court will instruct the jury that the jury should not award damages based on sympathy, passion, etc., and that if the jury decides to award compensatory damages, those damages are not meant to punish KIU. As such, the court denies this motion.

### E. KIU's Motion to Proffer Certain Evidence

Finally, KIU explains that it respectfully reserves the right to appeal the court's prior orders regarding interpretation of the Contract, and that it seeks to proffer, outside of the presence of the jury, evidence in support of the following:

- Mears had the contractual obligation to procure builder's risk insurance for the Project;
- the Westport policy satisfied KIU's obligation under the Contract, as the court interpreted it; and
- KIU is an additional insured on the Swiss Re policy, and the Swiss Re policy will provide coverage for the loss if the Westport policy will not.

KIU wants to present this evidence "to preserve these issues for presentation on appeal." ECF No. 129. In response, Mears argues that KIU's request is improper, untimely, and irrelevant to the matters left for trial.

These issues are already preserved for appeal, as KIU will be able to appeal all of the court's orders. If and when the Fourth Circuit considers those orders, it will do so based on the record that existed at the time the court issued the orders. KIU clarified at the hearing on the motions that it only seeks to proffer evidence if the court denies KIU's wavier argument. As the court discussed above, KIU may present a waiver argument as an affirmative defense that does not rely on the contractual language already rejected by the court and that only relies on Mears's actions after KIU's breach. Therefore, the court believes that a proffer is unnecessary, but if that is not the case, KIU may raise the issue at an appropriate time. The court denies this motion.

### III.  CONCLUSION

For the reasons set forth above, the court **DENIES** KIU's motion to exclude Jeff Puckett, **GRANTS** Mears's motion in limine, **DENIES** Mears's motion in limine regarding subsequent remedial measures, **GRANTS IN PART AND DENIES IN PART** KIU's motion in limine, **DENIES** KIU's motion in limine to allow contextual evidence regarding the breach, and **DENIES** KIU's motion to proffer certain evidence.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**January 31, 2020**
**Charleston, South Carolina**